AUGUSTUS H. LEE, executor, plaintiff in error, *vs.* FORTUNE N. CHISOLM *et al.*, defendants in error.

1. When this case was here before it was ruled that the following items of testator's will—"I loan to my wife during her natural life $5,000 00; also that my executors purchase for my wife a negro woman or girl, such as she may select, the same to be loaned to her her lifetime, the same to be purchased out of the proceeds of my property." "It is my will and desire that at the death of my wife the money loaned her, and the negro to be purchased by my executors, be sold, and equally divided amongst all my children and my grand-daughter, Elderenda Brown" * * *—created a life estate in the wife with remainder to the children and grand-daughter, and that "it was the duty of the executor so to execute the will as to effect that intention by investing the money, paying the widow the interest thereof during her life, and at her death to divide it equally among the children and grand-daughter, as directed by testator's will." This ruling was in this case and between these parties, and as far as it goes, is *res adjudicata.*

2. A decree in favor of the widow against the executor on a bill brought by her and answered by him, in which he sets up no defense in behalf of the remaindermen, but admits that the *corpus* is due the widow under the will, and defends solely on the ground that he has not enough assets of the estate wherewith to pay her, is no protection to the executor against the claim of the remaindermen for whatever *corpus* of this estate came into his hands in available assets. It was his duty to make these remaindermen parties by cross-bill, or by his answer in the nature of a cross-bill, or at least to have defended the widow's suit by setting up their right in remainder to the *corpus*, and having the will construed and their rights adjudicated; much less will he be so protected when his whole defense shows that he was endeavoring to protect his own private interests without the slightest regard to the trust he had undertaken, and when on a bill to open and review that decree in favor of the widow and to enjoin its collection, he swore that he "made no resistance and was not disposed to contest any matters with her," and again, that he supposed her bill "was simply an effort on the part of the complainant in said case to set up and establish her claim to said legacies against the estate of said Henderson, and this your orator did not and does not now pretend to resist," and when this whole bill of review and for injunction, sworn to by him, shows that it was filed solely to protect his own private estate.

3. Any money paid by the executor to the widow, whether voluntarily or under a decree so obtained, should have been the interest of this estate, and no part of the *corpus*, in order to protect the executor against the remaindermen, and as the evidence is sufficient to sustain the verdict of the jury in finding the sum they did, as available *corpus* in his hands, we will not control the discretion of the court below in refusing to grant a new trial.

Administrators and executors.    *Res adjudicata.*    Remainder.    Estates.    Before Judge HALL.    Newton Superior Court. September Term, 1875.

Reported in the opinion.

J. J. FLOYD, for plaintiff in error.

AMOS T. AKERMAN; CLARK & PACE, for defendants.

JACKSON, Judge.

Fortune N. Chisholm and three others brought their bill against Lee, the executor of Isaac P. Henderson, deceased, in which they alleged that they were entitled to certain property under the will of said Henderson, and particularly to an estate in remainder, in $5,000 00 in money, and in the value of a negro girl to be purchased by the executor for Mrs. Ruth Henderson, the wife of the testator; that by virtue of said will the said Ruth Henderson took a life estate in said $5,000 00, with remainder to complainants, and five others, children of said Isaac P. Henderson; that the negro girl was not purchased by the executor, but her equivalent in money went, by the terms of said will, to the said Ruth for life, with the remainder over to these complainants and the other children; that the assets of the said estate which came to the hands of said executor were sufficient to pay the said legacies for life, yet, that the said executor did not pay the $5,000 00, or the use or interest of the same over to the said Ruth for several years; that the said Ruth instituted suit in equity for her interest under the will, and after some litigation a decree was had in her favor for the sum of $7,279 40; whether this sum so recovered is the interest or principal and interest due the said Ruth is to be determined by the pleadings and proof in that case; that if the decree included the principal sum of $5,000 00 loaned to said Ruth, and the amount of money proper and necessary to purchase the negro girl, then said decree was erroneously rendered, and cannot excuse said exe-

cutor from accounting for the remainder with complainants, because they say it was the plain duty of the executor to have protected complainants as remaindermen either by bond and security for the repayment of the principal after the death of the said Ruth, or to have set up in his answer that said Ruth was entitled only to the interest on said sum; that said executor did not avail himself of these plain legal defenses, but relied on an insufficient answer, appearing without counsel in said important cause; that said executor paid over to the said Ruth the amount fixed by said decree, and sets up that said decree binds complainants, and discharges him from paying them anything; whereas, they allege that said decree was the result of fraud or accident, of gross negligence or mismanagement by said executor; that the executor should have protected the rights of complainants, and failing to do so is chargeable for such dereliction; that said Ruth died in 1872, and that complainants are now entitled to the *corpus* of this estate, and they pray, waiving all discovery, for account and settlement.

To this bill the defendant, Lee, filed a full answer, setting forth the assets which came into his hands, their nature, and what he realized from them, and pleaded the judgment recovered by Mrs. Henderson and the payment thereof in bar of complainants' recovery. He also states that it was his duty to execute the will as construed by the court in that case; that complainants, as privies, are concluded by it; that they were all advised of the pendency of said suit of the said Ruth, and the rendition of the judgment, and should have protected themselves by a proper legal proceeding; he denied that the decree was the result of fraud or accident or negligence on the part of defendant.

The inventory and appraisement of Henderson's estate was introduced in evidence, the will and bill and decree in favor of Ruth Henderson, and the receipts of her counsel for the money due under that decree. The only oral evidence submitted was that of John Harris, who swore that he had no recollection of being notified by Lee of the pendency of the

Lee *vs.* Chisholm *et al.*

suit of Mrs. Henderson; he got his share of Confederate money; also, the evidence of Robert J. Henderson, that he saw the money paid to Mrs. Henderson, his mother, by the executor; that he received his part of the Confederate money; that his mother died in October, 1872; that the executor gave up to him his larger note on his affidavit that it was given for negroes; that he was afterwards sued on it, and judgment went in his favor on the statute of limitations; also, the evidence of Mr. Akerman, who swore that a proper fee for defending this case would be from $250 00 to $500 00; also, that of Anderson, which is immaterial; also, that of John T. Henderson, who swore that he owed the estate $2,100 00, and the executor owed him about $1,800 00, and they exchanged notes; he gave his note to the executor for the difference, on which he was afterwards sued, and was protected by the statute of limitations.

The inventory and appraisement seem to be as follows:

Household and kitchen furniture, . . . . . . . . . . . . . . . $1,000 00
One pleasure carriage, . . . . . . . . . . . . . . . . . . .   500 00
One negro man, Carter, fifty years old, . . . . . . . . . . . 2,500 00
One negro woman, Lucy, sixty years old, . . . . . . . . . . . 0000 00
Thirty acres land, . . . . . . . . . . . . . . . . . . . . . 1,200 00

NOTES, INTEREST, TO 6TH MARCH, 1863:

B. F. Carr, note, two credits, . . . . . . . . . . . . . . . $1,304 00
Due July 25th, 1856, amount due, principal and interest, . . . . 1,665 85
B. F. Carr, due-bill, due August 20th, 1865, . . . . . $ 400 00
Interest, $43 16, . . . . . . . . . . . . . . . . . . . . . .   443 16
B. F. Carr, note, due 27th November, 1864, . . . . . . 4,000 00
Interest, $77 77, . . . . . . . . . . . . . . . . . . . . . . 4,077 77
B. F. Carr, note; house, B. F. Carr, . . . . . . . . . . . . . 5,000 00
B. F. Carr, note, due 25th July, 1863, . . . . . . . . 1,000 00
Interest, $112 52, . . . . . . . . . . . . . . . . . . . . . 1,112 52
J. T. Henderson, note, due January 3d, 1859, . . . . . 1,802 53
Two payments interest, $673 26, . . . . . . . . . . . . . . . 2,475 71
Robert J. Henderson, note, due 11th July, 1861, . . . .   450 00
Interest, $115 06, . . . . . . . . . . . . . . . . . . . . .   565 06
A. H. Lee, note, due 25th February, 1864, . . . . . . . 186 00
Interest, $13 56, . . . . . . . . . . . . . . . . . . . . . .   199 56
Robert J. Henderson, note, due October 6th, 1861 . . . . 22 00
Interest, $3 56, . . . . . . . . . . . . . . . . . . . . . .    25 56

| | | |
|---|---|---|
| J. H. Berry, note, due December 25th, 1862, . . . . . . 30 00 | | |
| Interest, $4 55, . . . . . . . . . . . . . . . . . . . . . | | 34 55 |
| *Fi. fa.*, J. H. Berry, principal, . . . . . . . . . . . 1,172 20 | | |
| Interest, $120 49, . . . . . . . . . . . . . . . . . . . . | | 1,292 69 |
| Confederate certificates, . . . . . . . . . . . . . . . . | | 3,000 00 |

Of this inventory the executor shows a satisfactory disposition of the household and kitchen furniture, carriage and negroes, of the first notes of Carr, and of most of the other assets, except the $5,000 00 note, reduced to $3,500 00, and J. T. Henderson's note and some smaller items; that is, it is unnecessary for this case to make a point upon them, enough being left for our conclusion on the propriety of the verdict.

The following items of the will only are important for the adjudication of the case, viz: "I loan to my wife, during her natural life, $5,000 00; also, that my executor purchase for my wife a negro woman or girl, such as she may select, the same to be loaned to her her lifetime, the same to be purchased out of the proceeds of my property."

"It is my will and desire that at the death of my wife the money loaned her, and the negro to be purchased by my executors, be sold and equally divided amongst all my children and my grand-daughter, Elderenda Brown."    *    *    *

The bill of Mrs. Ruth Henderson claimed that the sum of $5,000 00 and the value of the negro woman at the time of making said will, be paid over to her.

This bill was answered by the executor, who admitted the item of the will as charged, the death of the testator, and that he himself qualified as executor, and possessed himself of the things set out in the foregoing inventory except the household and kitchen furniture, carriage and mules which were given absolutely to Mrs. Ruth Henderson; that a negro woman, such as she would have selected, was worth, in good money, about $800 00 or $900 00. The answer said nothing about the estate in remainder, but in reply to specific questions, admitted the facts set out in the bill, but disputed the amount of assets charged against him.

On this bill and answer, the jury found a verdict for complainant for $7,279 40, and on this verdict a decree was en-

Lee *vs.* Chisholm *et al.*

tered up, but signed by the solicitor of the complainant and not by the chancellor, dated March 29th, 1871. Afterwards, on the 23d of May, 1871, an injunction was sued out against the said Ruth Henderson restraining the collection of said decree which was proceeding to levy upon the individual property of the executor, on the ground that the same was illegally signed as aforesaid, and the bill prayed that the said decree, and proceedings on which it was founded, might be reviewed. This bill alleged that " he made no resistance and was not disposed to contest any matters with her," and that " he supposed her bill was simply an effort to set up and establish her claim to said legacies, against the estate of Henderson, and this he did not and does not now pretend to resist," and the whole bill of review shows he was for protecting himself, and not these remaindermen. To this bill a very long answer was filed in which she, Mrs. Henderson, set forth all her grievances, charging him with abundant assets to pay her debt, that he, the complainant, was sworn as a witness himself on a former trial, and on a cross-examination admitted that her son who had owed the testator some $2,200 00, had exchanged notes with him, whereby he had paid him some $1,800 00 and given his note for the balance, and that he had a judgment against Carr for $3,500 00, and yet refused to pay her a cent; that the complainant had married her daughter, but her daughter had died before her father, the testator, and this was the reason she believed he had treated her so badly.

Upon the coming in of this answer at the September term, 1871, of the court, an order was passed revoking the former decree, and entering up another one for the same amount signed by the chancellor, and annulling the injunction because there was no equity in said bill except the illegal signing of the decree as aforesaid. On this last decree the money was paid by the executor to Mrs. Ruth Henderson.

In his answer to the bill of the present complainants the executor admits the following available assets: $3,500 00 against B. F. Carr, with interest from 28th September, 1867;

also $1,441 13, the difference between Henderson's and the executor's notes, paid him by Henderson; also $166 00, sale of thirty acres of land; also small note on R. J. Henderson for $32 00; also the value of Confederate money on the small note of this defendant, say $10 00, which, without computing interest, make the aggregate sum of $5,139 13; whereby he claimed in his answer that he paid Mrs. Ruth Henderson $376 62 more than all said available assets.

At the January term, 1875, of this court this case was here before us; (see 54 *Georgia Reports*, 611;) it was then ruled by this court that "the testator did not intend that the principal of the money bequeathed to his widow during her life should be destroyed in the use of it by her, but, on the contrary, he intended that his children and grand-daughter should have it after her death, and to carry out that intention his executors were appointed to execute his will, and it was their duty so to execute it as to effect that intention by investing the money, paying the widow the interest thereof during her life, and at her death to divide it equally among his children and grand-daughter, as directed by testator's will;" and this case was so ruled on the authority of *Thornton vs. Birch*, 20 *Georgia Reports*, 793.

The judgment of this court rendered in this case then, as contained in the *remittitur* transmitted to the court below, was "that the judgment of the court below be reversed on the ground that the court erred in deciding that it was the duty of the executor, under the will of the testator, to pay over to Ruth Henderson, his widow, the $5,000 00 loaned her in the 4th item of the will."

The case comes back to us now with the additional facts contained in the record of the bill filed by Mrs. Ruth Henderson against the executor, and all the proceedings consequent thereon, and the final decree rendered on those proceedings, and the payment of the money to her by the executor under that decree. On the trial of that case the court charged the jury, 1st. "That if an executor sets up a decree against himself as a reason for a departure from the terms of the will, he must

Lee *vs.* Chisholm *et al.*

show that either the pleadings filed to obtain the decree were made to have the will construed, or that under the pleadings evidence as to the construction was submitted, and the decree rendered in effect construing the will, and directing the executor what to do under the will." 2d. "That in this case Lee must show that a construction of the will was asked for either by the bill or answer in the case of Ruth Hendrrson against himself, or that evidence as to its construction was submitted and passed upon by the court and jury, and that the decree is in effect a decree construing the will, and directing him what to do under the will." 3d. "That the bill filed by Ruth Henderson claimed $5,000 00, with interest. The answer of Lee did not contest her right to the $5,000 00, nor does the decree, in express terms, construe the will or direct the executor, but is simply a decree for so much money. Such a decree, rendered on such a bill and answer, will not protect him in a departure from the will unless he clearly shows that evidence as to the construction of the will, was submitted and passed upon at the time, and that the decree in effect is a decree construing the will; for the will, the law as to him, prevented his paying it over, and his admissions of her right to recover the *corpus*, and the decree on that admission will not protect him any more than a payment of the money without a decree."

Error is assigned on each of these three charges; and also because the court refused to charge "that the judgment in favor of Ruth Henderson is for her interest under the will of Isaac P. Henderson, and is presumed to be for the correct sum and that presumption is conclusive on the executor and the legatees under that will, unless it be set aside for fraud;" and because the court erred in refusing to set aside the verdict, which was for the complainants, and to grant a new trial on the foregoing assignments of error; and because the verdict was contrary to law and against the evidence.

1. We think that the two first items of the charge of the court, to which exception is taken, may be considered as arguments or reasons leading to the conclusion to which his mind came on the law applicable to the facts of this case as they

appear in the pleadings and evidence disclosed in the record of the case of Ruth Henderson against the executor. If the court meant thereby to leave to the jury to draw their conclusions of law upon this record, he erred; but if he meant to explain the reasons on which his own judgment of the law, as set out in his third charge excepted to, was based, it was, perhaps, well enough. In any event, these charges did no harm, if he was right in the third charge wherein he ruled distinctly his view of the law applicable to the facts disclosed in that record. We consider the substance of that charge to be, that if the executor resisted the payment of the *corpus* of this estate on the ground that these remaindermen were entitled to it at the death of Mrs. Henderson, and in good faith and to the utmost of his ability, defended her suit against him for this *corpus*, and expressed a willingness to pay to her only the interest, then if constrained to part with the possession of the *corpus* by the decree of the court against his defense he would be protected; or if he insisted in his answer that such was the true intent and meaning of the will, then if overruled in this construction so set up by him in good faith, with the view to protect the remaindermen, he would be protected; and we understand him to say, in the third charge excepted to, that his answer, and all the pleadings and evidence, do not show that the will was construed, but show simply a decree for so much money, and that such a decree, rendered on such a bill, and with an answer filed by the executor, admitting the facts alleged in the bill, will not protect the executor. We have scanned this bill and answer closely, and examined this whole record, and we think the conclusion arrived at by the court below is correct. The answer of the executor sets up no defense in behalf of these remaindermen; he nowhere asks for a construction of this will, nor does he pray that the fund may be secured to the remaindermen at the death of the life-tenant by her giving bond and security for its preservation; nor does he ask that he may invest it, paying the life-tenant the interest annually, and preserving the *corpus* himself for the remaindermen. His whole defense is grounded upon his

Lee *vs.* Chisholm *et al.*

want of available assets, of his loss of assets by the effects of the war, notes founded on slave debts, and other misfortunes incident to the times. The remaindermen and their interest are totally ignored. It is true, that after this decree was had by her against him, and the execution issued thereon was levied upon his *individual* property, he filed a bill of review and obtained an injunction restraining the collection of the money out of his private property; but even then he does not set up the rights of these remaindermen or make any prayer for their protection. His whole mind seems to be so engrossed with the care of his own interest that the trust committed to him by the testator seems to have been left to take care of itself. He expressly disclaims in this bill for injunction, that he contests what she asks for, but says only that the estate is not worth the money. His exact language in this sworn bill is, that "he made no resistance, and was not disposed to *contest* any matters with her;" and in another part of the same bill he adds, that "he did not, and does not now, *pretend* to *resist;*" and every allegation in this bill shows defense of self, not of the trust. This court ruled that the estate of Mrs. Henderson, under this will, in this money, was only a life estate, and that it was his duty, as a trustee, to protect it for those entitled to it in remainder. He has not attempted to do this; if he had tried and failed, he might have been excused, but he seems to have made no effort at all. His proper course would have been to file a cross-bill making the remaindermen parties, and having their rights as against the life-tenant adjucated by the court, all the parties being before it. Failing to do this, he should at least have called the attention of the court to their interest, and had it passed upon in some form. The answer of Mrs. Henderson to his bill to review the first decree, discloses a state of facts not very creditable to her son-in-law, and certainly not entitling him to demand that a court of equity strain its powers in his behalf. It seems from that answer, verified by the facts of the case, that he left her without a cent from 1864, when her husband died, (and he was charged by the will to take care of her, and

see that she had the interest upon this fund, left her by her husband,) up to 1871, one year before she died, without paying her one cent. It seems from the facts that his excuse that he had no funds of the estate with which to pay her the interest, was but a flimsy pretext; one of the Hendersons exchanged a note he owed the estate for one that the executor owed him, and thereby the executor himself became indebted to the estate $1,800 00, or some such sum. He could have paid her at least the interest on that from year to year; for this exchange of notes appears to have been made soon after the close of the war; and thus, for a long time he had interest in his hands belonging to her with which to pay her.

2. In respect to the refusal of the court to charge, at the request of defendant's counsel, that these remaindermen were concluded by the decree in favor of Mrs. Henderson, it is unnecessary to repeat, after what we have already said, that we do not think their rights were adjudicated in that litigation, and therefore we think that the court did not err in refusing so to charge.

3. It remains to consider a single question, which is, is the verdict contrary to evidence, or rather, is there evidence enough to support it? That verdict was for each of the complainants, $630 09. There were nine remaindermen in all, which makes the whole amount which the jury found in the hands of the executor, $5,670 81. The decree was rendered on the 25th of September, 1875; the proof is that Mrs. Henderson died in October, 1872, so that there was interest due upon whatever *corpus* should have been in his hands for the remaindermen at her death for nearly three years. He, himself, admits in his answer available assets to the amount of $5,139 13, without computing any interest; the testimony of Henderson shows that the amount of indebtedness which the executor assumed in exchange of notes with him, was nearly, or quite, $1,800 00, instead of $1,441 13, which he admits, which would add more than $300 00 to the *corpus* with which he is properly chargeable. It was his duty to have preserved this *corpus*, paying only the interest to Mrs. Henderson. The

Lee *vs.* Chisholm *et al.*

interest on it, since her death, counting but for two years, would exceed the verdict of the jury, when, added to the principal; the interest on what he admits himself, in his answer, without contesting that answer with the testimony of Henderson, counting it from the death of Mrs. Henderson to the date of the decree, would exceed this amount found·by the jury. We have not passed unheeded the argument of defendant's counsel, that the larger portion of the verdict in favor of Mrs. Henderson was probably for interest, and that this interest should be deducted from the entire sum found, and the balance only would be the *corpus.*   The reply is, that under the rulings of this court, when this case was here·before, and also, under the same principle ruled in 20 *Georgia Reports*, the *corpus* could not be infringed upon to pay interest, but the fund should have been invested and the interest paid to the life-tenant annually, and the *corpus* saved for the remaindermen at her death.   In any view which we have been enabled to take of this case, in the light of the decisions heretofore rendered by this court, and of all the pleadings and evidence which this voluminous record developes, after a careful examination of the law and the facts, we are forced to the conclusion that the verdict is right, and we therefore decline to control the discretion of the court below, before whom the case was tried, in refusing to grant the motion for a new trial. No returns, except the inventory and appraisement, were ever made by the executor, nor is there evidence to show any legal administration of the assets which came to his hands belonging to the estate in the payment of debts.   He accounts for many of the assets, and shows their loss; but those *which he admits were good* are enough to satisfy the *corpus* of the fund found by the jury; and these he does not show satisfactorily were ever otherwise legally administered.   In respect to counsel fees and costs, it is enough to say that they were incurred in his own defense and not in defense of his trust; and as he made no returns, and failed legally to administer the estate, he should not receive commissions.

Judgment affirmed.