WIKLE, guardian, *vs.* WOOLLEY, executor, *ei al.*

1. If the facts had remained substantially as the testatrix contemplated them, there would have been no question as to a proper and literal execution of her will, but on account of unfortunate and unexpected circumstances, it became impossible to administer the will as she intended it should be; and all that the court can do is to make some substantial approximation to the scheme which she enunciated in her will. Whether the approximation made by the court below was entirely proper is a matter of some doubt, but unless this court could determine the matter better than that court, the result reached by it should not be interfered with. (Rep.)

2. As matter of strict legal right, it was never contemplated by the will that any debt should arise in favor of one beneficiary of the estate against another, payable out of income or *corpus.* It was never contemplated by testatrix that any one of her children, entitled to education and support, would ever have a debt against the estate or against the other children, arising from not enjoying that education and support; and the claim made here is in the nature of a debt asserted by one of the beneficiaries against the others, it being that the minor, who is the beneficiary in this case, is entitled, under the will, to have arrearages which have accumulated or are said to have accumulated in his favor, on account of his not having received past support, etc. out of the estate, allowed him in the distribution or division of the *corpus* thereof, or which shall take place in the future. (Rep.)

3. This minor was entitled to maintenance from two sources: first,

from his father, and secondly, from his mother's estate. Having enjoyed it from his father, he cannot, as matter of strict law, under the will, claim any other support or compensation for missing it out of his mother's estate. (Rep.)

4. While it does not clearly appear that the decision below was right, the burden of showing error is always on the plaintiff in error; and it has not been shown that such decision was so erroneous as to require that it be set aside. (Rep.)

May 11, 1888.

Wills.   Construction.   Approximation.   Minors. Before Judge FAIN.   Bartow superior court.   January term, 1887.

A. F. Woolley and F. H. Harris, as executors of Sarah M. Roper, filed their bill, alleging, in brief, as follows: By her last will, Mrs. Roper nominated her husband, J. C. Roper, as her executor, and also, on certain contingencies therein named, nominated complainants and Mary C. Roper as executors and executrix. The will was duly probated, and in 1874, J. C. Roper was removed from his trust and complainants and Mary C. allowed to qualify, which complainants have done but Mary C. has not, complainant Woolley having taken possession, control and management of the estate under the will.   It consists exclusively of real and personal property conveyed to testatrix by her husband by deed, at the time of making which he was much involved in debt.   Among others, he owed Pollard & Co., Harpold & Hillyer, Norton & Son and Wood, Taber & Morse.   These debts were all sued and judgments thereon obtained against Roper, and the *fi. fas.* issued therefrom were levied on the lands conveyed by the deed mentioned; and Roper being wholly insolvent, Woolley was forced to pay off and have transferred to himself the *fi. fas.* for the first three of the debts named, and to pay $1,000 on the debt of Wood, Taber

& Morse, leaving a balance still due thereon. There are still outstanding debts against Roper, contracted before the deed was executed, to which the property of the estate may be subjected. After the death of testatrix, her husband married again, and has three or four children by this second marriage. He was living, after the qualification of complainants as executors, on land of the estate, insisting on the exclusive right to possess and control it and appropriate the proceeds; was wasting and applying the whole of the rents and profits to the use and support of his second family; and Woolley and the legatees under the will were obliged to file a bill against him for injunction and receiver, upon which Woolley was appointed receiver of a portion of the property, leaving another portion under the control of Roper. Roper then filed a bill against Woolley, as executor, to set aside the deed already mentioned, and this bill was heavily litigated for several years, but was finally decided in favor of Woolley. Afterwards, in the bill against Roper, an order was passed, February 6, 1880, directing Woolley to turn over all the property in his hands as receiver to himself as executor, which he accordingly did. On the next day, Woolley, as executor, for the benefit of the children and legatees of the estate, paid Roper $500 in cash, two mules and all the household and kitchen furniture of testatrix, the last valued at about $200, in extinguishment of all claims that Roper had or might have on the estate under the will. This arrangement was beneficial to all the legatees, complainant having been harassed by Roper, and a proper administration of the estate constantly impeded and prevented by him. The remaining property of the estate consists of about 740 acres of land of the value of about $6,000. Complainant prays that this settlement may be ratified. At the time of making

it, complainant did not have in his hands any money belonging to the estate, and was obliged to pay it out of his own private funds. The only personal property he ever got as executor or as ·receiver was the two mules which he turned over to Roper, and a saw-mill and engine which he sold for $600. He bought two mules for use on the farm and afterwards sold them.

Testatrix left surviving her five children; Mary R. Roper, who has married John F. Hardin; Sarah F., who was then the wife of complainant, Harris; Kate E., who was then unmarried; Clarance E. and J. C. Roper, Jr. Sarah F. Harris died in 1876, leaving two minor children, George and Thomas, and since her death complainant Harris has married Kate E. Roper. It is prayed that a guardian *ad litem* may be appointed for the two Harris minors, and one for Clarence E., who is still a minor and of whom Woolley is the legal guardian. J. C. Roper is guardian for J. C., Jr. Owing to the waste of the estate while it was in possession of J. C. Roper, the heavy expenses of litigation with him, and the necessity to pay the debts and judgments mentioned, the estate has nearly all the time been indebted to Woolley. Roper consumed and wasted all the rents prior to 1877, and Woolley got only a portion of the rents for that year; and for the four years next preceding the present bill, the seasons have been very unfavorable for crops and rents small. As executor, Woolley owes certain attorney's fees and costs. He has paid out for the estate $344.12 more than he has received, his total receipts being $5,219.57. Since Woolley was appointed guardian for Clarence E., in April, 1884, the ward has been boarded, clothed and sent to school by the guardian. He has paid nothing to the support of the other children of testatrix, who insist that they, as well as the minors, are entitled, under the will, to a support out of the es-

tate. J. C. Roper, as guardian of J. C., Jr., now has a rule pending to compel complainant to make a further advance to him for the support of his ward. Complainants do not know what their duty under the will is; whether all the legatees are entitled to a support; whether the whole or a part of the *corpus* ought to be sold; what will be a proper amount for the support of the minor legatees; whether the two minor children of Harris are entitled to the share of their deceased mother and to an advance for their support and education; how far the executors can make advancements to legatees under the will; whether a final division of the property had best be made, etc. Hence complainants pray for a construction of the will and direction to them as to the administration of the estate, especially as to what should be paid to legatees, what legatees and for what purposes; whether the whole or any part of the land should be sold, etc.

The will of Sarah M. Roper, dated May 14, 1873, was as follows: By item 3, the desire is expressed that all her property be kept together for the education and support of her children, subject to such conditions and limitations as might be thereinafter expressed; and that her children should have all her property. By item 4, that her husband should have control and management of her property and a support out of it during his life, the control given him to be for the benefit of the children and his support, and for no other purpose. By the 5th item, her executors are given the right to give her children such portions of the property as the condition of the family would warrant, whatever was so given to be charged as advancements, but expenses of education and support not to be so charged. By the 6th item, power is given the executors to sell and reinvest. By the 7th, when her youngest child reached ma-

jority, if her husband were not then living, the prop-
erty was to be equally divided between the children,
advancements to be accounted for. By the 8th, issue
of dead children to receive the share their parent would
receive if living. The 9th excuses the executor from
giving bond. By the 10th, it is provided that, when
the youngest child arrives at majority, if her husband
be living then, he may keep sufficient property for his
support during life, and at his death all of his property
to be divided between the children. The 11th appoints
her husband executor, and provides that if he should
die, resign or be removed, he shall be succeeded by com-
plainants and Mary Roper. By item 12th, it is provided
that if any of the daughters marry and die without issue
therefrom, their husbands may enjoy such property
as such daughters received and which was reduced to
possession during their lives, and after the death of any
such husband the property to revert, etc.; this provision
to be applicable to both sons and daughters.

Also attached as an exhibit to the bill was the deed
from J. C. Roper to his wife, dated May 14, 1873, the
consideration being love and affection, and the convey-
ance being of all the property of Roper, except a certain
growing crop, some farming utensils, a tract of land and
a house and lot in Kingston. The deed concludes with
the assertion that these reservations are intended by
Roper for the benefit of his creditors and are ample to
pay all outstanding claims against him.

John F. Hardin, who had been appointed guardian
*ad litem* for the Harris children, joined with Mary R.
Hardin and Kate Harris in answering the bill, in which
answer most of the allegations of the bill were ad-
mitted. The answer alleged that Mary R. Hardin mar-
ried on September 3, 1873, and since then had received
nothing from the estate except seven or eight dollars

worth of corn; and she insists that she was and is entitled
to have a support out of the estate from the death of her
mother until it is divided.   Kate E. Harris and John
F. Hardin, as guardian, insisted that each of them was
entitled to one-sixth of the proceeds of the estate since
the death of testatrix until the final distribution ; that
the two younger heirs, especially Clarence E., would
not receive an education, and if so they are not entitled
to have anything out of the estate for education, and in
that event respondents would be entitled to one-fifth
instead of one-sixth.   They believe it would be to the
interest of all the legatees to have now a full and final
division of the estate, either by sale or by division in
kind.

Richard H. Dodd, as guardian *ad litem* for Clarence E·
Roper, answered, insisting that his ward was entitled to
a reasonable maintenance out of the estate during mi-
nority, and to be educated out of it ; but denying that
any of the other children, except J. C. Roper, Jr., was so
entitled.   He believed it would be for the interest of the
estate to have a full and final division now ; but he asked
that, if this were done, an account be taken and a proper
allowance made for his ward and J. C. Roper, Jr. , for
their support and education, over and above what was
allowed the other legatees, as well as a sum for deficien-
cies in past allowances.   J. C. Roper, for himself and as
guardian for J. C. Roper, Jr. , answered and said that
the estate was indebted to him, for board clothing, etc.
for his ward, $3,000 from January 1, 1877, to July 1, 1886,
and of this sum only $500 has been paid by the executor,
under orders of court, and the balance should be paid
before any division of the estate is made.   His ward is
only fourteen years old, and should be allowed, in addi-
tion to a share in the estate, $300 a year for support and
maintenance until majority.   From January 1, 1877, to

April 15, 1882, respondent laid out for Clarence E. Roper $1,800, for which he should be reimbursed out of the estate, except a credit of $250 paid by the executor under order of court; and this, too, should be paid before any division of the estate. He denied that any of the children or grandchildren, except Clarence E. and J. C., Jr., were entitled to any support out of the estate. He did not consent to a distribution of it and said such a course would greatly injure the minor children. The lands would not bring more than half their value, and if properly managed, the income from them would be amply sufficient for the support and maintenance of the minors, but if sold the income from the *pro rata* share of the minors would not be sufficient for this purpose, and in a few years the *corpus* would be wasted. The lands ought to be kept together and prudently managed until the minors become of age, and then divided and sold. He prayed for a construction of the will; for a decree declaring that the estate shall be kept together until the youngest child becomes of age; for an application of the proceeds, etc. to the support of the minor children; that complainants be restrained from further controlling the estate; and that a competent receiver be appointed to take charge of it.

A separate answer was filed by J. C. Roper, the only new matters set up in which are a denial that the estate consisted only of property conveyed by the deed; a denial that at the time the deed was made he was indebted, as mentioned, in any sum. He reserved, when he made the deed, sufficient to pay the debts. He was not insolvent, etc., etc.

All the questions made by the pleadings were referred to a special master to hear and report thereon.

A large amount of evidence was introduced before the master, tending to support the various allegations made

by the parties.  For the purposes of this report, it does not seem necessary to set it out in detail.

The case was subsequently re-referred to the master to pass on the accounts of Woolley for 1886, and he made a report on this subject, in addition to the former one.  The two are summarized as follows: He found that it was the primary intention of the testatrix that a support out of the estate should be furnished to those of her family who should be dependent thereon, and after such support was enjoyed it might be advanced to those of the children who had become independent of it. Hence he found that the two minor children should be supported and educated until they attain majority, and an allowance of $200 each year should be made to them ; but inasmuch as there were higher charges against the estate, he recommended that no allowance be made for what was past due or now becoming due until the charges presently mentioned were paid.    The purchase of the life interest of J. C. Roper was beneficial to the estate and should be confirmed ; it was a fair trade, and Roper was competent to make it.    The debts of Roper were debts for which the estate was liable. When the indebtedness of the estate was paid, the whole of the rents and profits of the estate should be applied to the support and education of the minors, provided they do not exceed the sum of $200 per year. It would be better to have the lands divided if the necessary support of the minors could be secured ; hence it is recommended that proper persons be appointed to divide them in kind, and the portions falling to Mrs. Hardin, Mrs. Harris and the Harris children be charged with such an amount as, with the rents and the portion falling to the minors, will make the sum allowed for their support and education ; and if the legatees decline to receive the shares so allotted to them, that their parts

be rented out and the rents applied in accordance with the above recommendation, etc.

As charges on the fund in the hands of the executor the master reported that court costs, attorney's fees and compensation for the master should be paid; after which the surplus, if any, should go to the support of the minor children. The balance due the estate by the executor to July 1, 1886, was found to be $537.49. The supplemental report on the accounts of the executor for 1886 found him to be due the estate for that year $83.08; and herein the executor is not credited with commissions.

Douglas Wikle, guardian *ad litem* for J. C. Roper, Jr., excepted to the original report, because:

(1) The master found that there were debts to be paid by the executor before the allowance to the minor of a support. This support should be first allowed, and the minor is entitled to a support at the rate of $200 per annum from January 1, 1877, subject to deduction for what has been received on this account; and the master should have found that the income of the estate was especially charged by the will with this support, and that the same had been diverted by the executor and appropriated to the purchase of the debts due by J. C. Roper and to the purchase of the life estate of J. C. Roper, making $1,924.98, to which should be added proceeds of the rent of the home place for two years; and if the estate is distributed, the amount past due J. C. Roper, Jr., with interest, and the amount which would become due for his support should be accounted for to him.

(2) To the report as to division of lands. The master should have found that no division should be made until J. C. Roper, Jr., attained his majority, and that a receiver should be appointed by the court to take charge of the lands, rent them out until that time and

apply the rents, profits, etc. to support and maintenance first, and the balance *pro rata* to the other charges against the estate, including the sum due for past support and maintenance, and that the fund now in the hands of the executor should be applied, first, to the costs of the case; second, to the compensation of the master; and then *pro rata* to the other charges.

(3) Because the master found that Woolley was entitled to fees of his counsel for filing this bill and carrying on the litigation under it.

Woolley filed exceptions to the supplemental report because it did not allow commissions.

On the hearing, the court dismissed the exceptions of Wikle, and ordered that the original report be approved, except so much of it as recommended a division of the lands, this point being reserved for future decision; the exceptions being dismissed, except so much of them as referred to this recommendation. Further, that the exceptions filed by Woolley to the supplemental report be sustained. The court then directed the jury, without evidence being submitted to them, to return the following verdict:

" We, the jury, find the facts to be in accordance with the finding of the master in chancery, as contained in the report of said master."

The court then made a decree in accordance with the order and verdict, directing that the estate be placed in the hands of a receiver to be appointed by the presiding judge in vacation, and that such receiver take possession of the estate and proceed to administer it according to the will as construed by the decree and under the direction of the court; that the funds in the hands of the executor be applied and paid in accordance with the recommendation of the master; and that the amount of the master's fees be left to be fixed by the

judge in vacation. Afterwards, in chambers, the judge fixed the master's fees and passed an order appointing a receiver.

To the dismissal of his exceptions, to the directing and taking of the verdict and to the making of the decree and order, Wikle, guardian, excepted.

GRAHAM & GRAHAM and MILNER, AKIN & HARRIS, for plaintiff in error.

McCUTCHEN & SHUMATE, J. A. BAKER and J. B. CONYERS, *contra.*

BLECKLEY, Chief Justice.

The sole question argued before us was, whether the minor, who is the beneficial plaintiff in error in this case, is entitled, under the provisions of his mother's will, to have arrearages which have accumulated, or are said to have accumulated in his favor, on account of his not receiving past support and maintenance and education out of the mother's estate,—whether he is entitled to have arrearages allowed him in the distribution or division of the *corpus* of the estate when it shall take place in the future, under the decree yet to be made in this case or in some other way? The scheme of the will evidently contemplated that the children of the testatrix, while members of the family, whether minors or adult, should have maintenance and support out of the estate; and those to whom education or further education was appropriate, whether minors or adult, would be entitled to be educated out of the estate. We think the will does not contemplate furnishing support (much less education) to adult children after their separation from the family; but if they remain members of the family, although they might have passed their

minority, there would seem to be no reason on the face of the will why they should not share in the support enjoyed by the family; for not only were the children to be supported, but the father also; and it seems to contemplate the keeping up of the estate, under the superintendence and management of the father, for the joint benefit of himself and his children who might remain members of the family. After that membership ceased on the part of any of them and they went out into the world to reside elsewhere, we think they would not be entitled to expect any support from this source.

1. If the facts had remained substantially as the testatrix contemplated them, there would have been no question as to a proper and literal execution of this will; but on account of unforeseen and unexpected circumstances, a literal execution of it became impracticable. Only some approximation could be made to an execution of it. One circumstance that frustrated the scheme was, that debts came against this estate which had to be satisfied out of it,—not the debts of the testatrix, but the debts of her husband existing at the time he had conveyed the property to her. Another circumstance that frustrated the scheme was, that the husband ceased to be entitled to the management of the estate. By some interposition, through litigation and the appointment of a receiver, he was deprived of his control over the estate, and over the application of it for himself and the members of his family. These two things rendered it impracticable to carry out the intention of the testatrix. It became absolutely impossible to administer her will as she intended that it should be administered; and all that a court can do is to make some approximation to the substantial scheme which she has enunciated.

Whether the debts should have been discharged out of the *corpus* or income was a matter of some difficulty, no doubt, for any court to determine.   The agencies and instrumentalities employed by the court to investigate the matter and settle the question, held that they were properly discharged out of the income.   Now, if they had been thrown upon the *corpus* when they were paid, there is no certainty that there would have been any income; and there is no way to tell how much the income which would have accrued and been applicable to this minor's education and support, would have amounted to had the *corpus* been diminished to the extent of the encumbrances.   We are unwilling, unless we could determine the matter better than the agencies employed by the court below, to interfere with that determination.

2. According to this will, it never was contemplated that, as matter of strict legal right, any debt should arise in favor of one beneficiary of the estate against another, payable out of income or *corpus*.   It is certain that it never was in the contemplation of the testatrix that any one of her children, entitled to education and support, would have a debt against the estate or against the other children, arising from not enjoying that education and support; and it will be observed that here the claim is in the nature of a debt asserted by one of these beneficiaries against the others.   We can see with a distinct vision, that it never was in the contemplation of Mrs. Roper, the testatrix, that any such result should follow from her testamentary scheme.

3. This minor was entitled to maintenance from two sources: first from his father, and secondly from his mother's estate.   He has had it from one of them; and having enjoyed it from the father, he now comes for compensation for missing it from the mother's estate, and claims in the nature of a creditor on account of income

having been applied to the discharge of encumbrances. He says, or his friends say for him, that this income ought not to have discharged the whole of the encumbrances; at most that it ought only to have contributed. Indeed, it is contended that the *corpus* was chargeable altogether ; but if not, it is said that both ought to contribute.     We think that as he has had his support from one of the sources from which he was entitled to have it, he cannot claim any other support, or any compensation for missing it out of his mother's estate. I mean he cannot claim it as matter of strict law.     If the court below, in endeavoring to approximate the testamentary scheme, had allowed it, we might have acquiesced ; but it was somewhat discretionary with the court, and those who represented the court in the adjudication of these matters, to make the approximation according to their own judgment.

There is a presumption in favor of adjudications when under review that they are correct; and the burden of showing error is upon the plaintiff in error, the party who asserts it.     In this case the error, if any, is not within the field of observation, and it is more on that account than from any distinct discernment that the judgment was in itself faultless, that we affirm it.

Judgment affirmed.