RAINES, executrix, *et al. v.* SHIPLEY; *et vice versa.*

Nos. 15158, 15159.   MAY 12, 1945.

322

326

328

*R. R. Jones,* for plaintiffs in error.

*Leonard Farkas* and *Walter H. Burt,* contra.

JENKINS, Presiding Justice. ■ One of the main problems involved in this case appears to have arisen when the plaintiff remainderman, seeking an accounting from the executors, amended her petition by setting forth the following allegation: "By striking paragraph 4 and inserting in lieu thereof the following: That Augusta Griggs Raines, Theodosia H. Duskin, E. W. Hollingsworth, and plaintiff operated the farms for the years 1941 and 1942, under a written contract, a copy of which is hereto attached, marked Exhibit B, during which years plaintiff alleges large profits were earned from said operations; that from said profits $10,078.90 was paid toward the retirement of indebtedness owing by Mrs. Theodosia Stewart Griggs in accordance with said written contract. The remainder of profits, which plaintiff alleges to be a large and substantial amount, were divided between Augusta Griggs Raines, Theodosia H. Duskin, and E. W. Hollingsworth to the exclusion of your petitioner, contrary to said agreement and her rights in and to said profits." The defendants thereupon demurred to the petition as thus amended as follows: "Now come defendants in the above-stated case, and file this their demurrer to the amendment filed in said case, and say: (1st) Defendants renew

their original demurrer to said petition as amended. (2d) Defendants demur to paragraph two of said amendment" (which amends paragraph 7 of the petition and relates to matters not referred to in paragraph 4, above quoted). It thus appears that there was no special demurrer to paragraph 1 of the amendment, substituting the new paragraph 4 above quoted, although there were special demurrers to other portions of the amendment and to the petition as amended, and the trial court overruled all the demurrers. This court in its former adjudication, ruled that the petition set forth a cause of action, and sustained the trial court in overruling the defendants' demurrers thereto. The court said: "All of the property owned by the testatrix at her death is liable for the payment of her debts; but, under the authorities hereinbefore mentioned, the devisees of a specific legacy on which a mortgage lien exists take the same cum onere, except that the debt thereon may be discharged out of other property included within the residuum." The effect of this ruling was that, even independently of any special rights of the plaintiff under the agreement signed by her as remainderman, by her life-tenant, and by all of the other heirs, there had been an erroneous application of funds in the payment of debts, and that therefore the petition set forth a cause of action. The plaintiff, now defendant in error, contends that the so-called power of attorney created a partnership among the signers thereof, in the operation of the property belonging to the estate, and that consequently she was entitled to her share of the profits, as profits, from the fund thus realized. She urges, to begin with, that this question is res judicata, having been thus adjudged in her favor by the action of the trial court in overruling the defendants' demurrer to her petition, and by the action of this court in sustaining his action in doing so. As to this we can not agree. It is true that, if there had been a special demurrer to paragraph 1 of the amendment, as above set forth, and the trial court had overruled same, and this court had failed to reverse such action, such a ruling on such a special demurrer would have remained the law of the case. *Savannah, Thunderbolt &c. Railway* v. *Savannah,* 115 *Ga.* 137 (41 S. E. 592); *Georgia Railway & Power Co.* v. *Decatur,* 153 *Ga.* 329 (3) (111 S. E. 911); *New York Life Insurance Co.* v. *Ittner,* 62 *Ga. App.* 31 (2), 36 (8 S. E. 2d, 582). It is also true that a demurrer *to an amendment* will gen-

erally be treated as a special demurrer (*Aycock* v. *Williams,* 185 *Ga.* 585, 588, 196 S. E. 54); but such a rule can not be given application here, where the demurrer, in response to the petition as *thus* amended in paragraph 1, merely "renews their original demurrer to said petition as amended," and demurs specially only to other and different matters contained in a different paragraph of the amendment to the petition. This being the state of the record, and in the absence of any special demurrer to the quoted paragraph 1 of the amendment, setting forth in effect the existence of a partnership in the operation of the estate's property by virtue of the instrument set forth as Exhibit B to the petition, it is our view of the law that the only adjudication constituting the law of the case is that the petition set forth a cause of action, and could not properly have been dismissed on demurrer. *Pardue Medicine Co.* v. *Pardue,* 194 *Ga.* 516 (2) (22 S. E. 2d, 143); *Stroup* v. *Imes,* 185 *Ga.* 422 (195 S. E. 411); *Sutton* v. *Adams,* 180 *Ga.* 48, 55 (178 S. E. 365). We do not think that the ruling of this court in *Georgia Railway & Power Co.* v. *Decatur,* supra, is contrary to what has just been said. There the court held that "an affirmance by the Supreme Court of the order of the lower court granting a temporary injunction is a ruling upon all questions of law involved, though the legal contentions may not have been specifically enumerated or mentioned in the opinion of the court." The headnote quoted is broad, perhaps too broad, but manifestly the principle stated when and as applied *to the ruling made in that case* was sound. In its opinion dealing with this headnote, the Supreme Court said: "The sole question at issue upon the former hearing of this case was whether or not the contract between the Georgia Railway and Power Company and the Town of Decatur was a valid, subsisting contract. Its validity was attacked in a number of ways, and many constitutional objections were raised thereto; but when this court reaffirmed the ruling in the mandamus case and held that, independently of the mandamus order, the trial court did not err in granting the interlocutory order, it was an adjudication of every attack upon the validity of the contract in question, even though the numerous objections may not have been specifically ruled upon in the opinion of the court." Thus the court could only have meant to say that the previous ruling, whether right or wrong, was the law of the case, because the ruling

made, and the judgment rendered, could not have been arrived at unless it had adjudicated adversely to the plaintiff each and every attack made upon the contract. The same reasoning applies in *Savannah, Thunderbolt &c. Railway* v. *Savannah,* supra. This is quite different from merely holding that the court did not err in refusing to dismiss a petition on general demurrer, because it is the well-recognized rule that such can not be done if the petition in *any* respect sets forth a cause of action.

■ Accordingly, it becomes necessary to determine whether the instrument set forth as Exhibit B to the plaintiff's petition did in fact create a copartnership between the signers thereof in the operating of the designated specific legacies made under the will. That it did is the contention of the defendant in error, and appears to have been acquiesced in by the trial judge in entering his decree. Whether or not this instrument, which is very lengthy, and the salient features of which we have sought to state in the opening paragraph of the statement of facts to this opinion, operated to render the plaintiff remainderman personally liable for any debts and losses which might have accrued (and the defendants do not seem to question that it did), the agreement did, beyond all question, jeopardize the plaintiff's remainder interest in the estate for any future debts thereby authorized. The plaintiff's argument is that, being thus responsible for losses, she should also be entitled to profits, and that therefore she and her cosigners were partners, and as a partner she should share in the profits. The argument of the defendants, now plaintiffs in error, in reply to this is, that "defendant in error, however, contends that since she became bound or liable for the payment of certain obligations which her agents might incur, she thereby became entitled to participate equally in any profits that might be made by her agents. In making this contention, however, her counsel overlooks the fact that she could not delegate to the agents named authority to do that which she could not do herself. She could not give to her agents the right to operate the property, because she did not have that right herself. She could, however, give to her agents the right to bind her on notes for borrowed money or for supplies that might be purchased. This was something that she herself could do in person. She could give her agents the right to sell or encumber her interest in the personal property, because

this was something she could do herself." As we construe this power, it has a plainly expressed intent and purpose. It recites that the estate was in debt, which the executors were unable to pay from available assets without selling property, and this was thought inadvisable; and that, since the executors were not authorized by the will to operate the "property belonging to said estate," it was the purpose of the power, signed by all the beneficiaries under the will, including the plaintiff remainderman, to authorize them to do that which the will had failed to do, and which the law did not otherwise permit—that is, to operate the property of the estate for the purpose of paying its debts. · While the plaintiff, as remainderman, had no interest in the income of the farms (except that the one-third share going to Hollingsworth for life was charged with her support during his life), she not only had a special interest in seeing that the liens on the farms were paid, but also had an interest in seeing that all the debts of the estate were paid, since all the property belonging to the estate, including her interest in remainder, was liable therefor. The plaintiff, therefore, in signing the power to operate the farms, became liable, at least to the extent of jeopardizing her remainder interest for any newly contracted debts which might have resulted in losses. ` In doing so, however, she stipulated, and all agreed, as set forth in the instrument, that the profits, after operating expenses, should go to extinguish the debts of the estate. The agreement, while thus bestowing powers upon the persons named as executors which the will did not give, did not, as we see it, make her a partner, but did require that all net · profits should be used in the payment of debts of the estate. The executors have paid all the debts, but they do not appear to have used all the profits in their extinguishment. It further appears from the agreed statement of facts that a large portion of the fund applied to the payment of debts was derived from the sale of timber (a part of the realty) and from the sale of personalty on a farm, in both of which the plaintiff had a remainder interest; and that another large sum used in the payment of debts was derived from the sale of the equity in another farm, in which the plaintiff had an interest in remainder. As we see and understand the case, the profits, under the signed agreement called a power, and such other funds in the hands of the executors not specifically devised, as also contemplated by the power, and under the law as previously adjudi-

cated by this court, should have been applied to the payment of estate debts and expenses. Had this been done, it seems clear that all the debts and expenses would have been satisfied. Therefore it would seem that the plaintiff would be entitled to recover her sixteen twenty-eighths of a one-third interest in the proceeds derived from the sale of the timber and land and the personalty located thereon. The exact calculation we do not feel that it is incumbent upon this court to make, or that it would be proper for us to do so. The legal and mathematical problems presented by this case are intricate, involved, and difficult to clarify. We think that the trial judge in rendering his decree showed a fine grasp and understanding of the problems, and the main difference which we appear to have with him is that in our opinion the signed agreement should be construed, not as setting up a partnership, but as merely extending the powers to the persons named as executors, so that they could operate the designated realty and use the personalty for the purpose of earning profits to pay debts, rather than sell the assets of the estate for such purpose. The line of demarcation, however, runs through and affects several divisions of the numbered decree. In signing the agreement, the plaintiff remainderman did not acquire any rights in the profits which might accrue from the operation of the farm, other than for the payment of debts, since the profits, as such, would go, not to her, but to the life-tenant. Code, § 85-604; *Gairdner* v. *Tate*, 110 *Ga.* 456 (2, 3) (35 S. E. 697). We do not think, therefore, that she is entitled to recover any portion of the profits earned over and above the amount necessary to pay such debts as the residuary estate could not pay. But, since she did jeopardize at least her remainder interest in the farms and personalty by authorizing the executors to operate them and incur new debts, we think that the purport of the agreement for such net profits as were required to go in extinguishment of debts should be enforced, and that no realty or personalty in which the plaintiff had a remainder interest should have been sold and applied for such purpose.

In the light of what has been said, we will now turn to the specific exceptions taken to the numbered divisions of the decree. To paragraph I no exception is taken. To paragraphs II, III, and IV exception is sought to be taken by cross-bill. Before giving attention to the technical objection to the validity of the cross-bill, we

had considered the merits thereof and reached the conclusion that none of its grounds could properly be sustained. We do not think, however, that, under the rulings made by this court in *Planters &c. Fire Association* v. *DeLoach,* 113 *Ga.* 802, 807 (39 S. E. 466); *A. C. Alexander Lumber Co.* v. *Bagley,* 184 *Ga.* 352 (2), 365 (191 S. E. 446); *Robinson* v. *Georgia Savings Bank & Trust Co.,* 185 *Ga.* 688 (8), 700 (196 S. E. 395); *Turnbull* v. *Foster,* 116 *Ga.* 765 (3), 770 (43 S. E. 42), the grounds of complaint thus sought to be reviewed can be raised by cross-bill. As was said in the first-mentioned case: "The cross-bill of exceptions is a remedy provided for the successful party in the trial court to have reviewed rulings made against him during the trial, in the event his adversary is successful in obtaining a judgment in the Supreme Court which in its effect leaves the case to be tried again in the trial court;" but as was said in the case next mentioned: "The cross-bill of exceptions as brought by this plaintiff could properly assign error only upon such rulings of the court as were adverse to her and related to the particular judgment which the court finally rendered in her favor, and which is complained of by the opposite party in the main bill of exceptions; this in order that the rulings so made by the court adversely to her may be corrected for her benefit in the next trial, if a reversal is ordered on the main bill of exceptions, or if an affirmance will leave the case to be tried again in the court below. If there is no reversal, or if affirmance does not leave the case to be tried again in the court below, the settled practice is to dismiss the cross-bill of exceptions." Finally, as was said in the third-mentioned (*Robinson*) case: "It is not the function of the cross-bill to review previous rulings adverse to the plaintiff in error in the cross-bill, where the *verdict and judgment* based on such adverse rulings were also adverse to such plaintiff in error." Accordingly paragraphs II, III and IV of the decree will not be disturbed.

As to paragraphs V to VII inclusive of the decree, paragraph V is based upon the assumption of a partnership, and is therefore disapproved. Paragraphs VI and VII while seemingly sound, pro tanto in amount, do not, as we see it, give full and precise force and effect to the signed stipulation with respect to the application of rents, profits, and undevised property. Accordingly, it is our opinion that paragraphs V to VII inclusive of the decree should

be remolded, so that a judgment in favor of the plaintiff shall be entered in accordance with the rule and plan outlined in this division of our opinion. If we be right in our conclusions of law as to this difficult case, the mathematical problems seem to be immensely simplified. As to the form of the judgment, it will be noted that three of the four defendants were the three executors named under the will, each of whom except J. W. Duskin was a legatee; one of them, Hollingsworth, being a life-tenant only with remainder over to the plaintiff, and the remaining defendant, Mrs. Theodosia H. Duskin, being a legatee whose husband was one of the three executors named as a defendant. An accounting is prayed against E. W. Hollingsworth, Augusta Griggs Raines, and J. W. Duskin as executors, they being named as defendants both in their representative and individual capacities. There was also a prayer for judgment against Mrs. Duskin. While the executors were sued in both their individual and representative capacities, and while the agreement refers to them as attorneys in fact, the legal *effect* of the instrument was to enlarge their powers as executors. Accordingly, their duties are measured by the terms of the will, except as they might be thus enlarged, so far as the legatees were concerned, by their signed agreement.

Direction is therefore given that judgment be entered in accordance with the plan above indicated against the executors in their representative capacity, de bonis testatoris, to be levied of the goods and chattels, lands and tenements of the deceased in the hands of the executors (see Code, § 113-2110); *Jennings* v. *Wright*, 54 *Ga.* 537 (3), 540; *Steinberg* v. *Freedman*, 186 *Ga.* 361 (198 S. E. 224); and, since the executors admit that they have applied for a discharge as having completely administered the estate, judgment should also be entered against them individually for the amount to which the plaintiff is entitled, that is, sixteen twenty-eighths of one third of the proceeds derived from the sale of the timber and of the land and the personalty located thereon, in which the plaintiff had a remainder interest. Since it appears that the executors have in effect paid to the defendant Hollingsworth the amount due to the plaintiff as above indicated, direction is further given that judgment be entered against Hollingsworth, who is ultimately liable for such payment, for the full amount thereof; and that, upon payment thereof by him and receipt thereof by the

plaintiff, the judgment against the executors will be discharged. See *Lane* v. *Tarver*, 153 *Ga.* 570 (6) (113 S. E. 452).

With respect to paragraph IX of the decree, section 2 of the agreement stipulated that the three named persons who were in fact executors under the will, but who were styled "attorneys in fact" in said agreement, "are likewise empowered to sell, exchange, or dispose of any other personal property belonging to said estate, either for cash, credit, or in exchange for other property, it being the intent of this to give our said attorneys full power to buy, sell, trade or exchange any or all personal property, and all farm supplies, fertilizers, or other things such as farm machinery, mules, tools, and equipment, either for cash or on credit, and upon such terms as may be agreed upon. In connection with the operation of said farm property, our said attorneys are authorized to employ farm superintendents or overseers, either from among their own number or otherwise, and to pay for the services for any person or persons so employed." Under this stipulation, we think that it was contemplated that any changes or enhancement in value in the farm personalty accruing from the profits should take the place of such farm personalty as the testatrix died possessed of, and in which the plaintiff held a one-third interest in remainder under the will. Neither the will nor the agreement seems to provide for any liquidation or division of such farm personalty; and we therefore hold that the plaintiff is not entitled to a judgment for any expenditures from the profits made with respect to the same, but that the plaintiff simply held and now holds a remainder estate in such farm personalty as the farm was equipped with at the time of the assent by the executors to the legacies, just as she had held under the will a remainder interest in such farm personalty as was in existence at the time of the testator's death.

■ As to paragraph X of the decree, the agreed statement of facts with respect to the clause giving plaintiff a support during the life of the life-tenant, is as follows: "That Nancy Stewart Griggs (now Shipley) resided as a member of the family in the home of E. W. Hollingsworth from the date of the marriage of E. W. Hollingsworth to her mother in 1935, up to the date of her marriage on September 26th, 1942, during which time she was maintained, supported, and educated by E. W. Hollingsworth, with Mrs. Theodosia S. Griggs contributing largely to her education, up

to the time of her death in December, 1940; that the said Nancy Griggs was sent to college for four years, two years to Radcliffe, and two years to the University of Georgia, where she graduated in June, 1941, and was thereafter sent to a commercial school in Columbus, Georgia, for a period of nine months; that on September 26th, 1942, she married Norman Shipley, of Stamford, Conn., who is now a lieutenant-colonel in the United States Army; that, since the date of her marriage, the said Nancy Griggs Shipley has resided with her husband, who has been and is now maintaining and supporting her. That if, under the above facts, Item 6 of the will of Mrs. Theodosia S. Griggs is to be so construed as to make E. W. Hollingsworth liable, during his lifetime, for the continued maintenance and support of the said Nancy Griggs Shipley, then the amount of such maintenance and support should be $———, per annum, from the date of the marriage of the said Nancy Griggs, and to continue so long as E. W. Hollingsworth shall live. The amount per annum for such support to be determined by a jury." Exception is taken to the construction of the will as made by the judge and his charge to the jury in accordance therewith. He charged them that the life-estate of the testator's son-in-law, Hollingsworth, was charged with the support of the testator's granddaughter, the plaintiff, so long as the life-tenant lived; and that her claim for such did not terminate upon her marriage, when a support was provided for her by her husband; and that the only question for the jury to determine was the amount of the support to which the plaintiff was entitled. The will in that respect provides as follows: "I will, bequeath, and devise all of my farm lands located in Terrell and Randolph Counties, State of Georgia, and all personal property located thereon, including cattle, stock, farm implements and tools, except as hereinafter provided, into three equal parts: one third to my daughter, Augusta Griggs Raines; one third to Theodosia Hollingsworth Duskin and her bodily heirs; one third to Edgar Hollingsworth, for his lifetime, but charged with the maintenance, support, and education of his stepdaughter, Nancy Stewart Griggs, during his lifetime, with the remainder to Nancy Stewart Griggs, my granddaughter." The plaintiff in error, Hollingsworth, cites in support of his position *Wikle* v. *Woolley*, 81 *Ga.* 106 (7 S. E. 210), and quotes from 101

A. L. R. 1483, where the note lays down the general proposition as follows: "Except in a case of absolute gift of support and maintenance, or the use of language which negatives such interpretation, it is usually held that, where provisions for the support of minors, or those dependent upon the family sustenance, no longer fit the individual needs of members who leave that relationship and receive their livelihood elsewhere, the obligation to apply any portion of the gift to them ceases." We do not think that the case at bar is similar in its facts to the *Wikle* case, decided by this court, so as to be controlled thereby. With respect to the rule stated in A. L. R. we think that the instant case presents a clear example where an "absolute gift of support" is provided for the granddaughter out of the property bequeathed for life to the testatrix' son-in-law; and that, to make the intention clear, the will expressly provided that the support should continue during the life of the testatrix' son-in-law, who was the stepfather of the testatrix' granddaughter. Accordingly, we think that the trial judge construed this provision of the will correctly. He having done so, then under the agreed statement of facts it was proper for the jury to fix the amount of such support during the term that the life-tenant should remain in life. In the absence of any such agreement, other problems might be presented. See *Barmore* v. *Gilbert,* 151 *Ga.* 260 (106 S. E. 269, 14 A. L. R. 1060) ; *Lee* v. *Chisholm,* 56 *Ga.* 126.

Nor do we think that the judge erred in allowing the plaintiff remainderman to interrogate the life-tenant as to the profits accruing from the life-estate property. Since the support was in a sense a charge upon the property, the income which could be and was derived therefrom threw light upon the question as to what would constitute a proper amount of the support to which the plaintiff would be reasonably entitled. Exception is taken to the language of the judge in his instructions wherein he told the jury that the life-tenant Hollingsworth had a life-estate "in all of her lands located in Randolph County, and all the personal property located thereon." The statement is literally true, since he did have a life-estate in all of said property, consisting of a one-third undivided interest therein. The judge was in no wise undertaking by this instruction to enlighten the jury as to the quantum of the life-estate. He did not indicate in the slightest degree how much land

there was or how much personal property, but expressly told them that the pleadings were before them, and this together with the evidence made it perfectly clear that the life-estate to the defendant Hollingsworth, with remainder over to the plaintiff, consisted of a one-third interest. Therefore we do not think that the general unelaborated expression could possibly have misled the jury or given cause for setting their verdict aside.

*Judgment on the main bill of exceptions affirmed in part and reversed in part, with direction; cross-bill dismissed. All the Justices concur.*