## BIRD *et al.* v. MITCHELL, for use, etc.

1. A judgment rendered at the suit of a distributee of an estate against the administrator of such estate is conclusive upon him, and in a suit against the sureties upon his official bond, is prima facie evidence of assets in the hands of the administrator, sufficient to discharge the judgment.

2. In such a suit it is competent for the sureties to plead in their defense and prove any fact which would serve to negative the liability of their principal, such as payment, set-off, and the like, and as well any fact which would serve directly to discharge them from liability.

3. While the ordinary in his discretion may, for proper cause shown, allow to an administrator compensation for extra services rendered to the estate,

yet the sureties on his official bond, when sued in an ordinary action at law for a default of the administrator in failing to account, are not authorized to plead and prove such service; and have an allowance therefor in the superior court.

4. Where at an administrator's sale a distributee became the purchaser of a portion of the property of the estate, received from the administrator a deed thereto, and subsequently procured the administrator as her agent to make a sale of such property to a third person, who executed drafts for the purchase-money, drawn in favor of the distributee, who in turn endorsed them to the administrator, in his personal capacity, for collection, the mere breach of the private duty to account for the proceeds of such drafts imposes no liability upon him in his official capacity, nor are the sureties upon his official bond liable for his misfeasance in that behalf.

Submitted April 14, — Decided May 6, 1897.

Action on bond. Before Judge Reese. Taliaferro superior court. February term, 1896.

On January 26, 1895, suit was brought by the ordinary for the use of Rebecca J. Ogletree, upon the bond of J. D. Moore as administrator of John R. Moore, dated July 4, 1892. No defense was made by the administrator; but the sureties on the bond filed pleas (in addition to a denial of indebtedness) of payment and of release and discharge of themselves as sureties. These latter pleas were stricken on motion, and error is assigned on this ruling. It is further assigned as error, that the court directed a verdict in favor of the plaintiff; and that the court refused to allow defendants to prove that the administrator was entitled to extra compensation for extraordinary services rendered by him in behalf of the estate. It appeared that no application had been made to the ordinary for such extra compensation, and none had been allowed. It further appeared, that the plaintiff, as a distributee of the estate of John R. Moore, cited J. D. Moore as administrator to a settlement, and the case was appealed by consent to the superior court, where it was referred to an auditor. Upon the report of his findings judgment was rendered in the superior court at the August term, 1894, in favor of plaintiff against the administrator, for the amount declared on in the present case, to be levied of the goods, etc., of the deceased, in the hands of the administrator to be administered. Execution following this judgment was issued, and upon it was made an entry of nulla bona. The

auditor in his report refused to allow any extra compensation to the administrator for any extraordinary services, and only allowed as compensation the usual commission of administrators.

The pleas referred to make the following allegations: At the sale by the administrator of the personal property of the estate, Rebecca Ogletree bid for and purchased some of said personal property for $219.17, she being the highest bidder therefor, which amount she did not pay, but agreed that it should be credited on her distributive share in said estate; and about December 31, 1892, in the town of Crawfordville, J. D. Moore paid in money, to Arthur Ogletree as agent of Rebecca Ogletree, $200 on her distributive share in the estate; and on November 7, 1892, J. D. Moore paid $372 to Rebecca Ogletree on her distributive share, in a note of A. Ogletree to W. A. Carey, which she accepted as $372 in money; which three sums defendants plead as part payment and set-off against the plaintiff's demand, and allege that Arthur Ogletree was the duly authorized agent to receive said $200 for Rebecca Ogletree. Further, she has been paid in full her distributive share in the estate, as shown by the following facts: All the real estate was sold on the first Tuesday in October, 1892. . Before that time all the personal property was sold, and the collectible debts to the estate were collected; all the debts against the estate were settled by the administrator; and there were in his hands sufficient amounts to pay all future expenses of administration. The full amount from the estate and the full distributive share therein to which each of the distributees and heirs at law was entitled respectively, was less than $1,000. Before the real estate was sold, an agreement was made between the administrator and the plaintiff and the other distributees, that if any of the distributees or heirs purchased or bid off any of the real estate at the sale, the amount for which such distributee purchased or which he or she was to pay for the property so bid off should be applied to the distributive share of said distributee as an heir at law of the estate. Rebecca Ogletree bid off 82 acres of land known as the Dr. Rhodes place, situated in and near Crawfordville, for $1,107, and on December 10, 1892, the administrator executed a deed to her, the deed conveying to her said place. On

the same day she sold said place for $1,500, and by her deed of that date conveyed it to the purchasers in consideration of $1,500, which sum was paid to her in two drafts payable to her order, she accepting them in full payment of said consideration and purchase-money and the same having been paid in full by the drawee. Thereafter she delivered these drafts to J. D. Moore, having endorsed them to be paid to her order. By reason of said facts and said conduct, defendants are released and discharged from any and all liability to plaintiff, because their risk as securities was thereby increased and they were exposed to greater liability.

By amendment defendants pleaded, that the sum of $219.17 was received by plaintiff on account of her distributive share in the estate, by virtue of her purchase of a part of the personalty of the estate at the public sale of the same by the administrator according to law in 1892, where she bid off such part for the sum named, which sum she did not pay, but agreed that it should be credited on her share in the estate; that the sum of $372 was paid her in a note of Arthur Ogletree, dated January 1, 1890, for $300, with interest from 1890 at eight per cent. per annum, payable to W. A. Carey or bearer, and in the deed from W. A. Carey to Rebecca Ogletree to the tract of land on which she resides, which deed was made in consideration of said note being paid, said note being for purchase-money of said land, which note and deed she accepted as part payment of $372 on her share in the estate on or about November 7, 1892, at her home in said county; and that the sum of $200 was paid to Arthur Ogletree, he being her duly authorized agent to receive said sum for her, on her share in the estate, this payment being made on or about December 24, 1892, in Crawfordville. Further, that the sum of $125 or any other sum should not be charged against or collected out of defendants as rent due by J. D. Moore for 1892 of the 82 acres of land known as the Dr. Rhodes place, for the reason that no rent was due by said Moore in 1892, but if due, it was an individual debt of Moore and has never been paid; that the amount due on the note of J. C. Jordan belonging to the estate should not be charged against or collected out of defendants, because said note has never been

collected ; that the account of the estate should be credited
with $30.75 and the share of plaintiff therein should be credited
with ⅟ of the same, which is due the administrator as extra
compensation for extra services rendered by him for the benefit
of the estate ; and that the accounts of the estate should be
credited with $124, and the share of plaintiff with ⅟ of that
amount, which J. D. Moore paid as part of the purchase-
money of the Dr. Rhodes place which was purchased by John
R. Moore in his lifetime and deeded to him by J. W. Rhodes.
The allegation as to the purchase by plaintiff of the Dr.
Rhodes place at the administrator's sale in October, 1892, and
her sale of the same and receipt of two drafts in payment of the
purchase price, are repeated ; whereby defendants plead that
her share in the estate has been fully paid and settled. J. D.
Moore has been insolvent ever since his appointment as ad-
ministrator in July, 1892, of which fact plaintiff was aware
at all times. There were only a few small debts against the
estate, and they were settled before the last of October, 1892.
Defendants further show, that before the sale of the realty there
was an agreement between the administrator and all the dis-
tributees, that the share of each distributee should be cred-
ited with or settled with the amount which he or she should pay
respectively for any property bid off by him or her at said
sale ; and after plaintiff bid off the Dr. Rhodes place and re-
ceived said two drafts, one for $1,300 and one for $200, she en-
dorsed and delivered them to J. D. Moore who collected them ;
which conduct on her part was the cause of her share not hav-
ing been paid in full, and the same increased the risk of defend-
ants and discharged them from all liability to her. Further,
at her home on February 2 and 23, 1892, J. D. Moore made in
money a full legal tender to plaintiff of the full amount due her
on her share in the estate, which she refused to accept, know-
ing at the time of Moore's insolvency; and he has not since been
able to pay her any amount that may be due her ; which con-
duct also increased the risk of defendants, exposed them to
greater liability, and released and discharged them. Further,
before said sale of the realty, there was an agreement between
the heirs at law of said deceased, that certain ones of the heirs

should bid on certain pieces of the realty at the sale and they were to give certain prices for certain pieces, even though they were bid off for less than the prices agreed to be given, plaintiff therein agreeing to buy the Rhodes place for an amount not exceeding $1,200, and that if she bid off the place for less than that amount she would still pay and account to the estate for said place at and for said sum; by reason of which agreement others did not bid on the Rhodes place, and plaintiff bid it off for $1,107. Afterwards, in the winter of 1892–'93, the administrator offered and was ready to make settlement with plaintiff of her said share, and had the money in hand with which to do so, but she refused to make the settlement unless she was allowed therein to take the Rhodes place at $1,100 instead of $1,200, she knowing at the time of the insolvency of J. D. Moore, and he has since been unable to pay any amount that may be due to her, by reason of not having the money or property with which to make said settlement; which conduct of plaintiff increased the risk of defendants, exposed them to greater liability, and released and discharged them. Further, upon said offer by J. D. Moore to make settlement with plaintiff as last recited, she refused to settle unless he would at the same time pay her the difference between the $1,200 which she was to pay for the place in the agreement, and the $1,500 at which she sold it; by which conduct defendants' risk was increased and they were discharged, etc.

It was admitted on the trial, that the administrator's returns, made on June 15, 1893, were correct except as modified by the auditor's findings. The testimony of the administrator was as follows: These returns are correct. Since then I paid to Mrs. Ogletree $200 out there on the square. Nothing was said as to where it should be applied. I was indebted to her at that time the amount that was due her on her distributive share of the estate; there was a little balance over that though. I paid this $200 to Mr. Ogletree out on the square; he is Mrs. Ogletree's husband, was acting as her agent, and as such represented her in collecting her distributive share of this estate. I have heard her say so; she would transact no business without he said so. I am her brother. I negotiated the sale of this place to Holden

for $1,500. I first paid that to her; the drafts were made payable to her. I collected the money at her request. There was an understanding that some money was to be paid by Ed. Ogletree, if he would agree on a certain price; that was $160. The $200 I paid Mr. Ogletree was in money, and of course I expected it to pay the $200 of Ed. Ogletree, for they had agreed to do it. Out of this $1,500 I suppose the $200 was to be paid in that way. I was only charged with $1,200 for that house. Out of the $300 I paid over this $200. They turned over the place to me to sell for them, and told me to ask $1,300 if I could get it. I kept the other $100 for my trouble. Out of the $1,500 it was agreed that Ed. Ogletree's debt was to be paid — I didn't say whether it was a part of the $1,200 or the $300. I held $100; the other $200 I paid Mr. Ogletree. I paid $200 of the $1,500 I got for the house. $200 of it was a part of her legacy.

Arthur Ogletree testified : Of the $1,500 for the house sold by my wife to Holden I got $200 ; that was to pay Holden what my brother Ed. owed him ; that was the money he paid me on the profit of the house — the difference between the $1,200 my wife was to take and the $1,500 he got for it. When he gave me the money he told me to pay the money that Ed. owed Holden. I was not acting for my wife. I think there was an agreement between him and my brother Ed. Moore and I represented Mrs. Ogletree in making the sale of the property. There was no understanding as to the Ed. Ogletree payment; it was after that. I said that was my understanding ; that was. what they told me ; I knew nothing about the agreement. Moore made the trade representing my wife.

Mrs. Ogletree testified : I never received from the administrator any part of my distributive share of my father's estate ; never received anything at all, except what was bought at the sale of the personal property ; knew nothing about this $200 until afterwards, and never received that at all.

*Horace M. Holden,* for plaintiff in error.
*James Whitehead,* contra.

ATKINSON, J. The official report states the facts.

1. To the proposition announced in the first headnote, it is.

only necessary to cite the opinion of this court rendered in the case of *Gibson* v. *Robinson*, 90 *Ga.* .756, and cases there cited, bearing upon and controlling the question then and now under consideration.

2. It will be seen from the record in this case, that this was a suit instituted against the sureties upon the official bond of the administrator. They pleaded that, notwithstanding the rendition of a judgment against their principal, they were discharged for the reason that he had in fact fully paid off and discharged all liability by him to the distributee bringing the suit, before the rendition of the judgment. The pleas of payment, as they are stated in the record, are in proper form and good in substance. They state the time and place of payment of the several sums alleged to have been paid by their principal to the plaintiff, with reasonable certainty; and we confess that we are at a loss to understand from the record upon what theory they were stricken on demurrer by the trial judge. In such a suit it is entirely competent for the sureties to plead in their defense and prove any fact which would tend to negative the liability of their principal, such as payment, set-off, and the like, and as well any fact which would serve directly to discharge them from liability. Under this view of the law, we think the court erred in striking the pleas which appear in the record.

3. We do not think the court erred in refusing to allow the sureties to plead and prove, upon the trial in the superior court, that their principal, in his capacity as administrator, had rendered to the estate represented by him certain extraordinary services for which he was entitled to extra compensation, and set up such allowance by way of set-off against the plaintiff's demand. Civil Code, § 3489, provides, " In other cases of extraordinary services, extra compensation may be allowed by the ordinary. But in no case is the allowance of extra compensation by the ordinary conclusive upon the parties in interest." The ordinary's court is the forum in which, according to the law, this question as to an administrator's right to extra compensation must be raised. It is one of the matters which rests in the wise discretion of the ordinary, and until he has passed upon the question, no other court has jurisdiction to take it

under review. In order for these sureties to have availed themselves of any advantage which they might have derived from this claim of extra compensation, the principal should first have applied to the ordinary for its allowance, and if allowed by him, it might then have been deducted from the assets of the estate in the hands of the administrator, thus indirectly reducing the amount to which the plaintiff, who sued as a distributee, would have been otherwise entitled to recover. In the absence, however, of any application to the ordinary for the allowance of such extra compensation, we are clear that neither the sureties nor their principal could, when sued upon the official bond, plead the value of any services rendered by the administrator as a set-off, before the claim had been liquidated by the judgment of the ordinary making the allowance. The court did not err in refusing to permit the defendants to introduce evidence in support of that branch of the defense.

4. Sureties upon the bond of an administrator are liable only for acts of nonfeasance or misfeasance upon the part of the administrator in respect of his official acts. If he fairly and honestly administer the estate committed to his care, and pay to the distributee his proportionate share of that estate, then, in so far as the distributee is concerned, he and his sureties are discharged from all obligations upon his official bond. It appears from the evidence in this case, that at a sale held by the principal of the sureties now sued, the plaintiff became a purchaser of a portion of the property of the estate, and received from the administrator a deed thereto ; that she subsequently procured the administrator as her agent to make a sale of the property so purchased by her to a third person, who executed drafts for the purchase-money, which were drawn in favor of the plaintiff. The plaintiff in turn endorsed them to the administrator, in his personal capacity, for collection. He collected the money ; and it is claimed by the plaintiff that he failed to account to her for the proceeds of the drafts. When she became the purchaser of the property at the administrator's sale and took a deed from him, the purchase-price being charged against her interest in the estate being administered, the administrator in his official capacity, as to such distributee, to the extent of the

value of such property, discharged the trust imposed upon him. The mere breach of the private duty to account for the proceeds of such drafts obviously could impose no liability upon him in his official capacity ; and if he were not liable for this breach of duty in his official capacity as administrator, the sureties upon his official bond can not be held liable for his misfeasance in that behalf. It follows, therefore, that the court erred in overruling the defendants' motion for a new trial ; and the judgment is accordingly Reversed. All the Justices concurring.