## GAIRDNER, administratrix, *v.* TATE, administrator.

1. Where an executor is cited by the ordinary to appear and make a settlement with the heirs, and he claims under a judgment of the ordinary allowing him extra compensation for extraordinary services, and the case is appealed to the superior court, the judgment of the ordinary allowing such extra compensation is not conclusive upon the heirs.

2. Where the testator left his estate to certain persons for life and after their death to their children, the estate consisting of money, promissory notes, and lands which were rented out by the executor for several years pending litigation over the will, it was error to restrict the share of the life-tenants to the interest accruing "upon money or other evidence of indebtedness" after the death of the testator and during the continuation of the life-estate, they being also entitled to the rents accruing upon the lands for the same period.

3. It was also error to charge that in a settlement between the executor and the life-tenants the executor was only authorized to pay them the interest accruing upon the money of the estate, where it appeared that the lands had been rented out and the rents collected by the executor.

4. Where it appeared that there had been much litigation over the probate of the will of the testator and many suits filed against the estate, and that the executor had employed several counsel to assist him in setting up the will and resisting the suits, and that by a judgment of the ordinary he had been allowed attorney's fees for all these services, it was error, when this item of his account was contested by the heirs as an improper allowance, for the court to restrict the executor in the payment of attorney's fees to payment for services in probating the will and for aid and advice in the general management of the estate.

Argued March 12, — Decided April 7, 1900.

Citation and appeal. Before Judge Reese. Elbert superior court. March term, 1899.

*John P. Shannon* and *J. N. Worley,* for plaintiff in error.
*I. C. VanDuzer* and *C. P. Harris,* contra.

SIMMONS, C. J.    George W. Dye died leaving a large estate consisting of lands, money, promissory notes and other choses in action.    By his will Gairdner and Grogan were nominated his executors.    They qualified, and Gairdner took charge of the moneys, while Grogan managed the lands of the estate.    These lands were rented out for about five years before they were turned over to the life-tenants.    The property was devised to certain negroes for their lives and after their deaths to their children.    The probate of the will was caveated.    Thirteen suits were filed against the executors.    They employed five attorneys to represent them in the litigation.    Upon application to the ordinary he allowed $5,000 for the services of each of these attorneys and also $5,000 to each of the executors as extra compensation.    An equitable petition was afterward filed by the life-tenants against the executors and the attorneys, seeking to compel the executors to pay over to them the income and profits which had arisen after the death of the testator, and seeking also to compel the attorneys to return to the estate a portion of the fees allowed by the ordinary, and to compel the executors to account for the extra compensation allowed them.    This suit was settled by the parties at interest, the executors paying the life-tenants a certain amount in full of all their claims.    Subsequently to this settlement Gairdner and Grogan both died. Mrs. Gairdner was appointed administratrix upon the estate of her deceased husband, and G. C. Grogan was executor of the will of his father, the other executor of Dye's estate.    Tate was appointed administrator de bonis non cum testamento annexo of the estate of Dye.    After his appointment he applied to the ordinary for a citation to Mrs. Gairdner as administratrix, and Grogan as administrator, to appear before the ordinary for the purpose of settling the estate and accounting and turning over to Tate all assets in their hands belonging to Dye's estate.    It appears that the ordinary of Elbert county was disqualified, and the ordinary of Madison county presided in his stead.    On the trial before the latter, he decided that there was nothing due to Tate as administrator from the defendants.    Appeal was taken

to the superior court, and on the trial in that court the jury found in favor of Tate for " all the notes and accounts and fi. fas. belonging to Dye.estate; also seven thousand three hundred and seventy-five dollars as principal and interest cash in the hands of Mrs. Lavonia Gairdner." A motion for a new trial was made, and was overruled by the court. Mrs. Gairdner excepted. It was said here that an agreement had been made in the court below for the case to proceed against Mrs. Gairdner, administratrix, alone, but there is in the record no evidence of such agreement. We presume it was made and acted upon, as the verdict was against Mrs. Gairdner alone.

1. Tate attacked the extra compensation allowed the executors by the ordinary and the fees allowed for the employment of counsel. Counsel for the plaintiff in error insisted that the allowance by the ordinary was final and conclusive between the parties. The judge charged the jury to the contrary, and this charge was made one of the grounds of the motion for a new trial. Section 3489 of the Civil Code declares that " in no case is the allowance of extra compensation by the ordinary conclusive upon the parties in interest." The judge charged this section upon this subject, and it was not error to do so. The case of Bird v. Mitchell, 101 Ga. 46, relied upon by counsel for the plaintiff in error, does not sustain him in his contention. In that case the administrator had been sued by the distributees and final judgment obtained against him. Afterward suit was brought in the superior court against his sureties on his bond as administrator. The sureties undertook to set up as a credit, extra compensation which should have been allowed the administrator; and this court held that they could not do so, because no such compensation had been applied for by the administrator and allowed by the ordinary. It was further held that such a credit must originate in the court of ordinary, and that the sureties could not set it up for the first time in the superior court in a suit against them on the administrator's bond. It was said in the opinion that until the ordinary has passed upon the question of extra compensation, no other court has jurisdiction to take it under review. None of this is in conflict with the section of the code on which our present ruling is based. The ordi-

nary passed upon the question of extra compensation, and the superior court was asked to review his decision. That this can be done is, we think, settled by the code.

2. It was claimed by Tate that Gairdner and Grogan had before their deaths paid out a part of the corpus of the estate to the life-tenants, and that he had the right to recover this from their administrators. The defendants contended that by the settlement with the life-tenants all matters pertaining to the life-estates were settled and that Tate was trying to recover property which was a portion of the life-estates. The judge, in charging the jury as to the difference between the corpus of the estate which belonged to the remaindermen and the income and profits which belonged to the life-tenants, instructed them that all interest "upon money or other evidence of indebtedness belonging to the estate," accruing after the death of the testator, belonged to the life-tenants and could be paid over to them by the executors. This was excepted to, as excluding from the consideration of the jury the rents arising from the lands which had been rented out and the rents of which should have gone to the life-tenants. We think the charge was too restricted, under the facts of the case. The estate included lands as well as money and evidences of indebtedness. These lands had been managed and rented out by Grogan, one of the executors. The rents arising from these lands during the continuance of the life-estates belonged to the life-tenants as much as did the interest accruing on money and promissory notes. If the executors paid to the life-tenants the rents as well as the interest, they were justified in so doing, and could not be held responsible by Tate, the administrator. Under the charge as given, the jury could and perhaps did fail to give the executors credit for the rents of the lands.

3. For the same reason it was error to charge that in the settlement between the executors and the life-tenants the former were only authorized to pay the latter the interest accruing on the *money* of the estate after the death of the testator. The record shows that promissory notes and lands constituted part of the estate. If the notes had been converted into money, then the charge was correct as to them; but the charge certainly ex-

cluded the rents arising from the lands during the continuance of the life-estates, and these rents, as we have seen, belonged to the life-tenants. The settlement made binds the life-tenants and also binds Tate, the administrator, so far as the interest of the life-tenants is concerned.

4. After the death of the testator, there was a great deal of litigation about the estate. The probate of the will was strongly resisted. After it was set up, thirteen suits were brought against the estate, one of them a suit by the county for "back taxes" amounting to about $28,000. The executors employed five attorneys to assist in the probate of the will, to advise them generally, and to resist the thirteen different suits against the estate. The ordinary allowed for attorney's fees $5,000 for each of the attorneys. Tate, the administrator, attacked this judgment of the ordinary, on the ground that the fees allowed were excessive, that there was no necessity for the employment of so many counsel, etc. The judge charged the jury, on this subject, as follows: "It is the duty of the executors named in the will to present the will and have it probated according to law, and they are authorized to employ counsel in thus having the will probated, as well as to employ counsel to aid and assist in advising them in the general management of the estate. They are further authorized to pay reasonable compensation or fees for this service." While this charge was correct as far as it went, it was not a full or complete charge upon the subject. The jury should have been instructed that they could take into consideration the defense of the numerous suits against the estate, in estimating what was reasonable compensation for the services of the attorneys. The charge given excluded from the consideration of the jury any services of the attorneys except those rendered in probating the will and aiding and assisting the executors in the general management of the estate.

For these reasons we think there should be a new trial of this case, and we respectfully suggest to the presiding judge that the case could with advantage be submitted to an auditor. Complicated and intricate matters of account are involved, and very few juries could take the case and, in the short time they have to consider such cases, arrive at an accurate and proper verdict.

*Judgment reversed. All the Justices concurring.*