# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## OCTOBER TERM, 1910

---

ADAIR *et al. v.* ST. AMAND *et al.*

ST. AMAND *et al. v.* ADAIR *et al.*

1. Taken as a whole, the evidence was sufficient to authorize the verdict of the jury upholding the finding of the auditor that the plaintiff in error, who sought to recover against the executor of her father's estate on account of waste and mismanagement, was not entitled to such recovery.

2. Considering the report of the auditor, the exceptions of law which were sustained, and those of fact which were approved and submitted to the jury, there was no material error against the plaintiffs in error in the first of the above-stated cases, if any at all, in the overruling by the court of certain exceptions of law and fact to the auditor's report.

3. The general rule is, that, where exceptions of fact to an auditor's report are submitted to a jury, the report is to be taken as prima facie correct, and the burden of overcoming it rests upon the party making the exceptions. Where a number of exceptions of fact were submitted to the jury, the presiding judge did not err in giving in charge this general rule. If more specific instruction as to surcharging and falsifying an executor's account, or placing on him, under certain circumstances, the burden of accounting for the estate in his hands, would have been proper in reference to a particular issue in the case, the failure to give it, in the absence of a request therefor, will not require a reversal.

4. Other grounds of the motion for a new trial in the first of the two cases argued together, complaining of charges and failures to charge without request therefor, do not show sufficient grounds for a reversal.

5. As in this State an executor is a quasi trustee with compensation, is he not bound to use ordinary care in regard to the management of the estate? Quære.

6. Where an estate is administered in the ordinary course, an application for extra compensation, under the Civil Code (1910), § 4067, should be made to the ordinary. But where, under an equitable petition by one

1

legatee, concurred in by others, a receiver has been appointed, and the superior court, in the exercise of its equity powers, proceeds to settle the entire estate, the executor may make application in that court to be allowed extra compensation.

7. Under the evidence, it can not be declared as matter of law that the executor was or was not entitled to extra compensation. It was proper to submit to the jury the exception of fact to the auditor's allowance of extra compensation, after such exception had been approved by the judge.

8. Under an equitable petition filed by a residuary legatee against the executor of a will, and with the concurrence of the two other residuary legatees (who were also executors), a receiver was appointed, and the court proceeded to wind up the estate. After a reference to an auditor and a report by him, finding in favor of the executor certain compensation, exceptions of law and fact were filed by the moving legatee and one of the other residuary legatees. Some were approved and some disapproved by the judge. To the approval of a part of them exceptions pendente lite were filed, not on the ground that the exceptors were not proper parties to file the exceptions, but on the merits. When the case came to this court after final judgment, error was assigned on the bill of exceptions pendente lite. *Held*, that it can not be declared that the executor was entitled to have a decree entered in his favor, regardless of the exceptions to the auditor's report and the trial of them, on the ground that the parties who filed such exceptions had no right to do so.

9. Though the charge of the court on the subject of impeaching a witness may not have been felicitously expressed, it does not furnish ground for a new trial of the entire case.

10. Where an executor claimed compensation for keeping books, under a written contract entered into between him and his coexecutors, who were also two of the residuary legatees, and a subsequent parol contract, assented to likewise by a third residuary legatee, fixing the amount to be paid per year for keeping such books; and where the undisputed evidence showed that the books actually kept were not such as were agreed by the written contract to be kept, there was no error in charging that the executor was not entitled to compensation on that ground, and that the jury should find in favor of the exception to the allowance of such compensation.

11. Where the estate of a decedent was put into the hands of a receiver, and the various issues arising were referred to an auditor, one of them being whether the executor was entitled to extra compensation, and, if so, to what amount; and where the auditor reported that the executor was entitled to be paid a named amount as extra compensation, to which an exception of fact was filed and submitted to the jury, the question was not one of primary discretion on the part of the jury as to whether there should be an allowance of such compensation and the amount thereof, but was whether the auditor erred in his finding on that subject.

(a) It was accordingly error, under an exception to the auditor's report which attacked the right to have any extra compensation allowed, to charge the jury that it was within their discretion to determine whether

the executor was entitled to such compensation, and, if so, to how much, and that if they found that the extra compensation reported by the auditor was improperly allowed, because the executor was not entitled thereto, or because the amount allowed was too great, they should find in favor of the exception.

(b) Upon an issue of whether an amount reported by the auditor as extra compensation for an executor is excessive, all the facts and circumstances disclosed by the evidence which will throw light on that subject are for the consideration of the jury.

12. There being no contention in this court that the amount found by the auditor in favor of the executor as ordinary commissions should not be permitted to stand, it is unnecessary to determine whether, where an executor is permitted by the will under which he was appointed to carry on a business, he is required by law, in making his annual returns to the ordinary, to include in detail each item of receipts and expenditures in the carrying on of such business.

(a) An accidental or ignorant omission to make an annual return will not ipso facto destroy the right to extra compensation on the part of an executor, though his entire conduct in connection with the discharge of his trust, and its effect upon the estate, may be considered.

13. Where the evidence introduced before an auditor appointed in an equitable action is conflicting, the presiding judge has some discretion as to approving exceptions of fact to the report, and submitting them to a jury accordingly, or disapproving them.

14. That a party in an equitable action may move for a new trial, after the verdict of a jury on exceptions of fact to an auditor's report, will not make it erroneous to enter a decree while the motion is pending.

15. Direction is given that the judgment in the first case be affirmed; and that the judgment in the second case be affirmed in all respects except on the subject of extra compensation claimed by the executor. The exception of fact to the auditor's report on that subject, which has been approved by the judge, is directed to be resubmitted to the jury, to find whether or not the exception shall be sustained to the allowance of the extra compensation found by the auditor; and if the jury find that the executor is entitled to some extra compensation, but not to the amount so awarded, to fix by their verdict the proper amount.

(a) As a determination of this question may to some degree affect the discretion of the presiding judge in taxing the costs, it is directed, that, after this issue shall have been tried, the costs be retaxed.

MARCH 3, 1911.

Exceptions to auditor's report. Before Judge Pendleton. Fulton superior court. November 13, December 10, 1909.

C. W. Crankshaw, to whom was left a special legacy by the will of E. W. Marsh, deceased, filed an equitable petition against the executors, praying for a decree requiring them to assent to his legacy, to dispose of the property, and to pay the debts and legacies. Mrs. Adelaide L. Adair, a daughter of the testator and one of the residu-

ary legatees under the will, intervened, charging mismanagement and waste on the part of St. Amand, who was alleged to be the managing executor, and praying that a receiver be appointed, that St. Amand be enjoined from interfering with the estate, that an accounting be had, and a judgment be rendered against him, and for general relief. St. Amand filed an answer. The two other executors, who were sons of the decedent and residuary legatees, joined in the prayer for the receiver. One was appointed. The case was referred to an auditor. St. Amand filed an intervention, in which he set up a claim against the estate for unpaid ordinary commissions, for extra compensation, and for certain other items. The presiding judge allowed the intervention, caused it to be served on the receiver, and referred it to the auditor. The receiver filed an answer to it. The auditor made a report, finding in favor of St. Amand a certain amount as regular commissions (reducing the amount claimed, on account of failure to file certain returns as required by law), also a sum for extra compensation, and an amount on account of bookkeeping, and certain other items. He found against the claim of Mrs. Adair to recover a judgment against St. Amand. One of the testator's sons, who was also an intervenor, and Mrs. Adair asked that the report be recommitted, which was done, and a supplemental report filed. Exceptions both of law and of fact were filed by Mrs. Adair and her brother. Some of the exceptions were overruled, and some of them approved. The exceptions of fact which were approved were submitted to a jury. They found a verdict sustaining a number of the exceptions, and against the others. Exceptions pendente lite were filed by each side. After verdict, each moved for a new trial. Both motions were overruled, and the movants respectively excepted. After St. Amand had filed his motion for a new trial, Mrs. Adair and her brother, who joined with her, moved the court to enter a decree. The court granted the motion over the objection of St. Amand, and this was also assigned as error. There were several interventions which need not be set out here. The two cases were argued together in the Supreme Court.

*Rosser & Brandon* and *John L. Hopkins & Sons,* for plaintiffs in error.

*Hamilton Douglas, Westmoreland Brothers,* and *Anderson, Felder, Rountree & Wilson,* contra.

LUMPKIN, J.   These cases present some unusual features.   The leading points of contest were whether Mrs. Adair was entitled to recover of St. Amand on account of waste or mismanagement as executor of her father's estate; whether he was entitled to commissions, or whether he had forfeited any claim thereto; and whether he was entitled to extra compensation, and to be allowed certain claims against the estate.   Mr. Marsh died testate in 1900, leaving a widow, two sons, and a daughter, Mrs. Adair.   Besides certain special legacies, he directed his executors to pay a stated annuity for life to his widow, and left the residue of his estate to his three children.   As executors he named his two sons, St. Amand, and a fourth person who did not qualify.   It was provided that the two sons should receive none of the fees for administration.   The executors were given power to sell, and to borrow money, in their discretion, to satisfy indebtedness and preserve the estate.   It was declared that the final distribution of the estate by the executors should be "at such time as they deem best."   The testator had a hotel property and mineral spring (one son having a one-sixth interest in the spring property) with a little railroad running from the former past the latter to a neighboring town, some mineral lands, and some other property.   A water business had been conducted in connection with the spring, with a branch office in New York.   This was continued after the death of the testator.   The hotel was leased for a time, and then operated by the executors, or St. Amand as one of them.   The three executors agreed that St. Amand should be the managing executor; that he should keep a set of double-entry books for the general estate and also for the Bowden Lithia Springs, and deposit money in a certain bank to be drawn out on checks signed by him and one other executor; and that all acts relative to the administration of the estate should be agreed on by a majority of the executors before consummation. This plan was not strictly adhered to in practice.   St. Amand did most of the management.   The other executors sometimes signed checks in blank, leaving St. Amand to fill them out and sign them afterward.   The water business was treated as a separate business, with a separate bank account; the hotel business was also treated as distinct, and the general estate account was kept separate and charged with items claimed to have been received from the other business.   For a time one of testator's sons dealt with the water

business and drew checks on account of it. There was evidence that the other son dealt, at least to some extent, with the branch office in New York and sent checks to it, signed in blank. The hotel business failed to produce net profits; and there were heavy expenditures.

1, 2. It was argued, as a reason for holding St. Amand liable, and denying him extra compensation, that he failed to make returns to the ordinary, as the law required, and only included in his returns what he claimed to be the net results of the water business. Assuming that this was not a strict compliance with the law, it must not be overlooked that the duty of executing special trusts (whether under the act of 1900—Acts 1900, p. 51, or the law prior thereto) and of making returns rested by law on all of the executors. Were this a suit by creditors against all of them, it would be no answer for some of them to say that they looked to St. Amand to do these things. There was some evidence tending to show that the returns were made as agreed by the other executors as to net proceeds. They were two of the three residuary legatees, the special legacies having been settled, and the widow's annuity adjusted. The executors qualified in November, 1900. No return at all was made until the February term, 1903, of the court of ordinary. Though Mr. Marsh had expended several hundred thousand dollars on the hotel and spring property, at his death it was appraised at only $37,500. It was evidently thought by the executors to be best to keep the estate together for a time at least, and the business going. When a bank from which money was being borrowed questioned the right to operate the hotel, the testator's two sons (who were both executors and residuary legatees) and Mrs. Adair, the third residuary legatee, all joined in an agreement that the executors might continue the management of the estate "in such manner as they deem fit," and make any contract relative to such management they might deem proper. This was on June 17, 1903, when it was plain that prompt returns had not been made to the ordinary, and those filed did not contain specific details of the operations of the water and hotel business. It would be profitless to enter into a full discussion of the voluminous evidence. Taken as a whole, there was enough to authorize the verdict of the jury upholding the finding of the auditor that Mrs. Adair should not recover against St. Amand on account of

waste or mismanagement of the estate. Nor was there any material error, if any at all, in the overruling by the court of certain exceptions of law and fact to the auditor's report.

3. The general rule laid down in the code is, that, where exceptions of fact to an auditor's report are submitted to a jury, the report shall be taken as prima facie correct, and the burden be upon the party making the exceptions. Civil Code (1910), § 5141. There were a number of exceptions of fact submitted in this case. The presiding judge gave in charge the general rule. This was certainly not error. If more specific instruction as to surcharging and falsifying an executor's account, or the placing on him, under certain circumstances, of the burden of accounting, would have been proper in reference to a particular issue, the failure to give it, in the absence of a request therefor, will not require a reversal.

4, 5. Other complaints of charges and failures to charge. without request do not show ground for a new trial. As the jury found against extra compensation for the executor, if there was any inaccuracy in the charge as to what would suffice to forfeit such compensation, it was evidently not injurious to these plaintiffs in error; though probably since an executor is in this State a quasi trustee with compensation, he is bound to use ordinary care in regard to the management of the estate. *Lawton & Willingham* v. *Fish,* 51 *Ga.* 647, 651.

There were some inaccuracies in the auditor's report. He perhaps brushed aside the act of 1900 rather lightly as irrelevant; and in some other respects his report was not wholly free from objection. But the presiding judge approved a number of exceptions to it, and submitted those of fact to the jury, so that the main questions of fact bearing on the right claimed by Mrs. Adair to recover and the claims of St. Amand were thus passed on under the exceptions of Mrs. Adair and her brother. We think that none of the rulings of the judge on the exceptions filed by those two parties make a reversal proper at their instance. Some of the rulings and findings may at first appear not altogether consistent; but when carefully considered, giving the verdict a reasonable intendment, there is nothing which requires a reversal.

6. We now turn to the second case. At common law an executor or administrator was not entitled to compensation for his personal trouble and loss of time in the performance of his duties.

11 Am. & Eng. Enc. Law (2d ed.), 1277 and citations. Provision has been made in this State by statute for regular commissions to be paid to an administrator or executor, and for extra compensation in proper cases. At first, an executor, administrator, guardian, or trustee who might have had extraordinary trouble in the management of the estate could bring an action in the general "court of pleas" for his services. Later the court of ordinary was authorized, in its discretion, to allow additional compensation in certain cases; but parties in interest were not prevented from contesting the reasonableness of the allowance in any suit in the superior court. Afterward it was provided that in case an executor, administrator, or guardian, in the discharge of his duty, should be required to travel out of the county of his residence, the ordinary should allow the actual expenses incurred, and also a reasonable compensation for the time necessarily devoted to such service; but such allowance was subject to the revision of a court of equity. See Cobb's Digest, 301, 304, 337; Acts 1851-52, p. 100. Finally these various acts were codified, and it has been by the code provided, that, as compensation for his services, an administrator shall have a commission of two and a half per cent. on all sums of money received by him on account of the estate (except money loaned by him and repaid to him), and a like commission on all sums paid out by him. He is required to make annual returns. Civil Code (1910), § 4062 (Civil Code (1895), § 3484). Formerly a failure to make returns forfeited all commissions. Cobb's Digest, 306. Later this was changed, so that an administrator forfeited only the commissions for the year of his failure; and the ordinary, upon cause shown, might relieve against such forfeiture. Cobb's Digest, 340; Civil Code (1910), § 4069 (Civil Code (1895), § 3491). When an administrator's duty requires him to travel outside of his county, his necessary expenses are to be allowed, and a reasonable compensation for the time devoted to this service may also be allowed. Civil Code (1910), § 4066 (Civil Code (1895), § 3488). On the subject of extra compensation generally it is provided by the Civil Code (1910), § 4067 (Civil Code (1895), § 3489) as follows: "In other cases of extraordinary services, extra compensation may be allowed by the ordinary. But in no case is the allowance of extra compensation by the ordinary conclusive upon the parties in interest." These provisions of law

apply also to executors. Civil Code (1910), § 3892 (Civil Code (1895), § 3316).

On behalf of the defendants in error it was contended that the exclusive mode of obtaining extra compensation was by application to the ordinary, and that the superior court had no jurisdiction to make such an allowance. From what has been said above it will be seen that the allowance by the ordinary was never conclusive on the parties in interest, and that the superior court always had a right to review his judgment. In the ordinary progress of administration, an application to the ordinary is the proper method of obtaining extra compensation. While equity will not, as a general rule, interfere with the regular administration of estates (Civil Code (1910), § 4596), yet, "a court of equity shall have concurrent jurisdiction over the settlement of accounts of administrators." Civil Code (1910), § 4075. When a court of equity takes jurisdiction, it will do complete equity. In this case, on the application of Mrs. Adair, concurred in by her two brothers, who were both executors and legatees, the superior court, in the exercise of its equitable jurisdiction, took charge of the winding up of the estate of the decedent, and appointed a receiver for it. Under such circumstances, it would no more require the executor claiming extra compensation to leave that court and make application to the ordinary than it would require an application for leave to sell the property to be so made.

In *Bird* v. *Mitchell*, 101 *Ga.* 46 (28 S. E. 674), a distributee of an estate obtained a judgment against the administrator, and sued on the official bond. It was held, that, in such a common-law action the sureties on the bond could not undertake to set up that the administrator had performed unusual services and was entitled to extra compensation, which should be credited in the nature of a set-off. There was no general winding up of an estate in a court of equity. In *Davidson* v. *Story*, 106 *Ga.* 799 (32 S. E. 867), an executor paid to himself an attorney's fee for representing the estate. On an equitable petition for an accounting, an auditor, to whom the case was referred, refused to allow the item, because the proof as to the character and value of the alleged services was too vague and indefinite. While the opinion of this court made some reference to the question of whether application should have been made to the ordinary, it was distinctly said that it was not neces-

sary to decide that point. In *Gairdner* v. *Tate,* 110 *Ga.* 456 (35 S. E. 697), an executor was cited by the ordinary to appear and settle with the heirs. He claimed under a judgment of the ordinary allowing him extra compensation. The case was appealed to the superior court and thence was brought to the Supreme Court. The ruling of this court was that the judgment of the ordinary allowing such extra compensation was not conclusive upon the heirs. In *Walton* v. *Gairdner,* 111 *Ga.* 343 (36 S. E. 666), an executor, under authority in the will, discharged a general legacy by the delivery of stocks or bonds. The questions involved were whether he was entitled to a commission equal to that allowed where cash is received and paid out, or whether a delivery of the stocks and bonds should be treated as a delivery of property in kind. There was no question of an application for the allowance of extra compensation. What was said in the opinions in those cases must be considered in the light of the questions under consideration. None of them were like the present case.

7. It was further contended that the conduct of St. Amand was such as to require a finding against any claim for extra compensation. On the other hand, counsel for St. Amand contended that he was entitled, as matter of law, to have a decree entered for the amount of extra compensation found by the auditor. Each side urged that the uncontradicted evidence required a decree in its favor. We can not agree with either of these extreme positions. The auditor found that St. Amand was entitled to a certain amount of extra compensation; and that his conduct was not such as to forfeit or preclude his claim. Exception was taken to such finding. Without entering into a discussion of the evidence, it is sufficient to say that it was proper to submit to the jury the exception of fact on this subject for their decision, and that this court can not declare, as matter of law, that there could be but one possible result.

8. After exceptions to the auditor's report had been filed by Mrs. Adair and one of her brothers, and some of them had been approved by the presiding judge, St. Amand filed a petition, reciting the history of the case and that no exceptions had been filed by the receiver, and praying that a decree should be entered in accordance with the finding of the auditor, and that the receiver pay to him the amount found in his favor. This was denied, and

the judgment was affirmed by this court. *Saint Amand* v. *Nunnally*, 131 *Ga.* 469 (62 S. E. 589). At that time the case was treated as if no exception had been taken to the order of the judge approving certain exceptions to the auditor's report. It appears that in fact exceptions pendente lite were filed, and they are now brought up in the record and error assigned on them. Counsel for St. Amand again contend that Mrs. Adair and her brother had no right to file exceptions to the auditor's report; that the receiver alone could do so; and that St. Amand was entitled to a decree for the amount found by the auditor in his favor. We can not accede to this position, for three reasons: First, because the contention that St. Amand had the right to ignore the exceptions of Mrs. Adair and her brother, and claim a decree in spite of them, was practically decided to be unsound, in the decision above cited; second, because it does not appear that any motion to strike the exceptions was made or any ruling properly invoked in the court below as to the right of these two parties to file such exceptions, the assignment of error merely being upon the approval of certain exceptions upon their merits; and, lastly, because we are not impressed with the argument, that, if a legatee proceeds in equity to have an accounting by an executor and to seek a judgment against him for mismanagement and waste, because a receiver is appointed, the moving legatee practically loses all right as a litigant, and can not contest whatever claim the attacked executor may set up against the estate. There are cases where a receiver is the proper party to bring an action or defend one. In this case the court directed the receiver to be served. But we can not hold that a legatee who sought an accounting, which involved not only claims against the executor but claims which might be made by him, and which would affect the interest of the legatee, lost all right to be heard in regard to the very questions that she had come into court to raise and that her petition brought about, because a receiver was appointed.

9. The charge of the court on the subject of impeaching a witness may not have been most aptly expressed. Civil Code (1910), § 5884 (Civil Code (1895), § 5295). But it would not require the grant of a new trial.

10. One ground of the motion for a new trial filed by St. Amand was that the judge charged as follows: "J. G. St. Amand

also claims $3,333.33 for keeping books for the estate, and the auditor found this amount for him. He claims that he entered into an agreement with his coexecutors by which he was to keep books, and also had a verbal agreement with them, which was concurred in by Mrs. Adelaide L. Adair, that he was to be paid for that service the sum of $1,000.00 a year. He avers that he kept the books, according to this agreement, for four and one third years, and was paid $1,000.00 and that the estate owes him $3,333.33 on that contract. The legal effect and proper construction of this contract is that J. G. St. Amand was to keep a complete double-entry set of books for the business known as the Bowden Lithia Springs Company, and that he shall receive a thousand dollars a year for that service; the undisputed evidence is that no such books were kept for the Bowden Lithia Springs Company; and you are directed to find for the exception to the finding of the auditor on this claim." The claim of St. Amand on account of bookkeeping was based entirely upon an alleged contract in writing, providing that he should keep books, supplemented, as he claimed, by a subsequent parol contract as to the amount to be paid him for such services. The written contract between him and his coexecutors contained the following: "A complete double-entry set of books shall be opened for the estate generally, and for the business now known for [as] the Bowden Lithia Springs Company. Both sets of books shall be accessible and subject to the inspection, at all times, to either of the undersigned. Upon the general set of books the entire business of the estate shall be entered," etc. This plainly provided for keeping a double-entry set of books of the general business and also such a set of books for the Bowden Lithia Springs Company, ordinarily referred to as the water business. From an examination of the evidence, we do not think there was enough to authorize a finding that a double-entry set of books was kept for the Bowden Lithia Springs Company. There was accordingly no error in the charge of the court on that subject.

11. In regard to the exception of fact to the auditor's report bringing in question the claim for extra compensation, the presiding judge fell into material error in his charge. Several grounds of the motion for a new trial involved this subject. He charged the jury: "It is within your discretion, to be wisely exercised, to determine whether he is entitled to extra compensation on this

account; and if so, how much." Again he charged: "The law does not say that an executor should have extra compensation for extra services such as are claimed in this case; it says he may have extra compensation; whether he ought to have extra compensation, and, if so, how much, is to be determined by the jury in the exercise of a wise discretion, seeking to be fair and just both to executor and to the estate." Still further he charged: "If you find that the executor, J. G. St. Amand, is entitled to extra compensation, and is entitled to as much as the auditor [found] for him, your verdict should be against the exception; if you find that he is not entitled to extra compensation, or, if entitled, is not entitled to as much as the auditor found for him, your verdict should be for the exception." After the jury had retired and deliberated for some time, they were recalled, and a colloquy took place between the foreman and the court. The foreman said: "Your honor, we want it to be made clear whether we are to change any of these figures, as to compensation." The judge replied: "No, sir. If you find that the compensation as allowed by the auditor was the right amount, you would find against the exception; but you have no right to fix the compensation." The foreman said: "If the finding of the auditor is too much, we, of course, make our decision for the exceptors; then he would get nothing; that would be the idea?" The court answered: "No. That is a matter with which you have no concern; it is your business to find for or against the exception; it isn't any question with you whether the executor will get anything, or how much he will get. If this is too much, you find in favor of the exception; if it is right, you find against the exception; and the question as to what he will get, in the event that you find in favor of the exception, is a matter that you are not concerned with." He had previously instructed the jury that if St. Amand was entitled to extra compensation, in fixing the amount they would look to all the facts and circumstances as shown by the testimony, such as the work he did; the time it took, the ordinary commissions which he would have been entitled to under the law, and whether the business was profitable or unprofitable to the estate.

We think our learned brother was somewhat confused as to the exact issue which was on trial before the jury. Extra compensation for extra services "may be allowed." The statute does not

say that they shall be allowed. Had the case been one for settlement before the ordinary, a sound discretion as to the allowance of such compensation would have been used by him. When the entire settlement of the estate became absorbed into the superior court exercising equitable power, that court took the place of the ordinary in regard to the allowance of extra compensation. Had the case proceeded to a trial primarily before a jury on evidence and counter-evidence as to the conduct and services of the executor making the claim, the judge should have submitted to the jury the issue raised by the pleadings and evidence, with proper instructions to them. The case did not, however, thus proceed. It was referred to an auditor, to report on this as well as other matters. A report was made, and exceptions of fact filed. Some of them were approved, including one on the subject of extra compensation. The case thus came before the jury, on this point, not as an original, discretionary question of allowing extra compensation; but on the question whether the auditor's report on that subject was right, or whether the exception to it should be sustained. In determining that question it was proper for the jury to consider all the circumstances bearing upon it, such as the amount and character of the work done, the time it consumed, the ordinary commissions to which the executor would have been entitled under the law, and whether the business was profitable or unprofitable to the estate. Perhaps misfortune or lack of success might not be an absolute bar to some reasonable allowance; but whether his efforts were beneficial or not would be a matter of consideration along with the other circumstances. In so far as the judge instructed the jury that the entire circumstances disclosed by the evidence and throwing light on the subject were for their consideration, there was no error. But the question for them to determine was whether the auditor had erred in his finding, under the evidence; not what they would have done as a matter of original discretionary action. From the colloquy which occurred between the judge and the foreman of the jury an inference might be drawn that the jury were inclined to think that St. Amand was entitled to some extra compensation, though not as much as the auditor had found. The judge instructed them, in effect, that in such event they must sustain the exception. An examination of the exception of fact which directly objects to the finding of the auditor in regard to extra

compensation shows that it did not attack such finding so much as excessive as on the ground that the executor was not entitled to any extra compensation. A finding of the jury generally sustaining that exception would be conclusive on the executor that he was entitled to no extra compensation. So that the result of the judge's charge would be, that, if the jury believed that the executor was entitled to extra compensation, but not as much as the auditor awarded him, they must find a verdict the effect of which would be to debar him of any such compensation at all.

12. Exceptions were filed to certain portions of the auditor's report in which he expressed the opinion that where an executor conducted a business under the will of the testator, such as the water business connected with the mineral spring which was owned by the testator and his son, it was not necessary to include, in the returns to the ordinary, every detailed item of receipts and expenditures arising from such source, but that it was sufficient to use net results in making the returns. The presiding judge approved the exceptions to these findings, and error was assigned by St. Amand on this approval. In view of the result of the case as to this branch, it is not necessary for us to deal with these assignments. Under the verdict of the jury and the decree of the court, St. Amand was declared to be entitled to receive all the balance which the auditor had awarded to him as ordinary commissions. No contention is made here as to such allowance. In fact, counsel for the adverse side say in their brief: "The correctness of the court's contention as to this matter, however, is of slight importance in the case at bar. St. Amand's ordinary commissions are not here at issue. . . . A failure to make returns at all in no way affects the question of extra compensation and compensation for bookkeeping." As St. Amand obtained a decree for all that the auditor awarded him as ordinary commissions, and he is not excepting to the amount recovered, a step in the reasoning of the auditor in arriving at that result is not very material. See, on the general subject of the operation of a business by an executor under power contained in the will, and the right to commissions in connection therewith, *Lamar* v. *Lamar*, 118 *Ga.* 684 (45 S. E. 498). As already stated, the law provides a penalty for a failure to make returns; namely, a forfeiture of commissions for transactions during the year within which no return is made, unless relieved by

the ordinary. An accidental or ignorant omission to make a return will not ipso facto destroy any right to traveling expenses and compensation under section 4066 of the Civil Code (1910), or for extra compensation on account of extra services under section 4067.

13. It was contended that the presiding judge erred in approving certain exceptions of fact to the auditor's report. But, where the evidence is conflicting, the judge has some discretion on this subject; and we can not say that it was abused in this case. *Brown* v. *Georgia Mining etc. Co.,* 106 *Ga.* 516 (32 S. E. 601); *Cranston* v. *Bank of the State of Georgia,* 112 *Ga.* 617 (37 S. E. 875).

14. After St. Amand filed his motion for a new trial, the court on motion entered a decree over his objection, and this was assigned as error. We see none in the ruling. A litigant can not, as matter of right, obtain a supersedeas by filing a motion for a new trial. Civil Code (1910), § 6081.

15. From what has been said it follows that there was error requiring a reversal on only one point in either of the two cases under consideration—the question of extra compensation. It would be useless to return either of the cases for an entire retrial. Without discussing whether or not the judge presiding in a court exercising equitable jurisdiction could, by virtue of his general powers, submit to the jury such an issue under the exception to the auditor's report, this court has the authority to give direction to the trial court, and in the exercise of its power under the Civil Code (1910), § 6205, we direct that the judgment in the first case be affirmed; that in the second case the judgment be affirmed in all respects save the one indicated; that the presiding judge submit to the jury the exception of fact involving the question whether St. Amand is entitled to the extra compensation awarded to him or not; and that he submit a supplemental issue to the jury, and instruct them that, in the event they find in favor of the exception on the ground that the amount awarded by the auditor was too large, but believe from the evidence that St. Amand is entitled to some extra compensation, they shall so state, and find to what amount he is entitled. As to what the jury should find on either branch of the question we express no opinion. There being no exception on St. Amand's part as to the amount fixed by the auditor, in no event could more than that amount be allowed him.

Inasmuch as the determination of this question may affect the discretion of the presiding judge in taxing the costs, it is further directed that the costs be retaxed by him, in the use of a sound discretion, after such issue has been decided.

As in the second case St. Amand has obtained a correction of the judgment complained of by him, and a retrial of one issue, the costs of bringing that case to this court and the costs accruing in this court are awarded against the defendants in error therein.

*In the first case, judgment affirmed. In the second case, judgment affirmed in part and reversed in part, with directions. All the Justices concur.*