RAINES, executrix, *et al. v.* SHIPLEY.

No. 15261.   NOVEMBER 16, 1945.   REHEARING DENIED DECEMBER 3, 1945.

182

*R. R. Jones,* for plaintiffs in error.

*Farkas & Burt,* contra.

CANDLER, Justice. ■ The first question for decision is whether the principal amount of $6670 which the trial court awarded to Mrs. Nancy Griggs Shipley is excessive or contrary to the facts. In contending that it is excessive, the plaintiffs in error say that Mrs. Shipley is limited in her recovery to 16/28 of one-third of the amount received by the executors of the estate of Mrs. Theodosia Stewart Griggs, deceased, from property sold by said executors in which Mrs. Shipley had a one-third undivided remainder interest, consisting altogether of $11,450 from the sale of timber from the Randolph County lands, $2253.68 from the sale of personal property from the Randolph County lands, and $8525.00 from the sale of the equity above the mortgage on the Terrell County (McLain) land, making a grand total of $22,228.68 before a division into three parts, or $7409.56 for a one-third part of which 16/28 would amount to $4234.03. On the other hand, the defendant in error replies that the plaintiffs in error should account for $12,800, the amount of the mortgage on the Terrell County (McLain Place) land as a part of the value of that property which, if so accounted, and added to the total of $22,228.68 admitted by the plaintiffs in error, would give a grand total of $35,028.68, or being divided into three parts would give $11,-676.22 2/3 for a one-third part, 16/28 of which would amount to $6670 principal, as found and awarded by the trial judge.

It is obvious that a correct solution of this phase of the question involves an accounting problem which should be dealt within the light of the will, the power of attorney for the management and operation of the property, and the agreed statement of facts as interpreted by the previous opinions of this court in this case. See citations of such cases in the preceding statement of the present case. In *Raines* v. *Shipley,* 199 *Ga.* 316 (34 S. E. 2d, 281), this court, said: "As we construe this power, it has a plainly expressed intent and purpose. It recites that the estate was

in debt, which the executors were unable to pay from available assets without selling property, and this was thought inadvisable; and that, since the executors were not authorized by the will to operate the 'property belonging to said estate,' it was the purpose of the power, signed by all the beneficiaries under the will, including the plaintiff remainderman, to authorize them to do that which the will had failed to do, and which the law did not otherwise permit—that is, to operate the property of the estate for the purpose of paying its debts. While the plaintiff, as remainderman, had no interest in the income of the farms (except that the one-third share going to Hollingsworth for life was charged with her support during his life), she not only had a special interest in seeing that the liens on the farms were paid, but also had an interest in seeing that all the debts of the estate were paid, since all the property belonging to the estate, including her interest in remainder, was liable therefor. The plaintiff, therefore, in signing the power to operate the farms, became liable, at least to the extent of jeopardizing her remainder interest for any newly contracted debts which might have resulted in losses. In doing so, however, she stipulated, and all agreed, as set forth in the instrument, that the profits, after operating expenses, should go to extinguish the debts of the estate. The agreement, while thus bestowing powers upon the persons named as executors which the will did not give, did not, as we see it, make her a partner, but did require that all net profits should be used in the payment of debts of the estate. The executors have paid all the debts, but they do not appear to have used all the profits in their extinguishment. It further appears from the agreed statement of facts that a large portion of the fund applied to the payment of debts was derived from the sale of timber (a part of the realty) and from the sale of personalty on a farm, in both of which the plaintiff had a remainder interest; and that another large sum used in the payment of debts was derived from the sale of the equity in another farm, in which the plaintiff had an interest in remainder. As we see and understand the case, the profits, under the signed agreement called a power, and such other funds in the hands of the executors not specifically devised, as also contemplated by the power and under the law as previously adjudicated by this court, should have been applied to the payment of

estate debts and expenses. Had this been done, it seems clear that all the debts and expenses would have been satisfied. Therefore it would seem that the plaintiff would be entitled to recover her 16/28 of a one-third interest in the proceeds derived from the sale of the timber and land and the personalty located thereon. The exact calculation we do not feel that it is incumbent upon this court to make, or that it would be proper for us to do so. The legal and mathematical problems presented by this case are intricate, involved, and difficult to clarify. We think that the trial judge in rendering his decree showed a fine grasp and understanding of the problems, and the main difference which we appear to have with him is that in our opinion the signed agreement should be construed, not as setting up a partnership, but as merely extending the powers to the persons named as executors, so that they could operate the designated realty and use the personalty for the purpose of earning profits to pay debts, rather than sell the assets of the estate for such purpose. The line of demarcation, however, runs through and affects several divisions of the numbered decree. In signing the agreement, the plaintiff remainderman did not acquire any rights in the profits which might accrue from the operation of the farm, other than for the payment of debts, since the profits, as such, would go, not to her, but to the life tenant. Code, § 85-604; *Gairdner* v. *Tate*, 110 *Ga.* 456 (2, 3) (35 S. E. 697). We do not think, therefore, that she is entitled to recover any portion of the profits earned over and above the amount necessary to pay such debts as the residuary estate could not pay. But, since she did jeopardize at least her remainder interest in the farms and personalty by authorizing the executors to operate them and incur new debts, we think that the purport of the agreement for such net profits as were required to go in extinguishment of debts should be enforced, and that no realty or personalty in which the plaintiff had a remainder interest should have been sold and applied for such purpose."

In the above-quoted portion of the opinion on the previous appearance here of this case, the court apparently made inaccurate statements in two sentences thereof as follows: "The executors have paid all the debts, but they do not appear to have used all the profits in their extinguishment. . . Had this been done, it seems clear that all the debts and expenses would have been satis-

fied." In making those statements this court was doubtless misled into that error by paragraph (5) of the agreed statement of facts, which listed only the amount representing the equity price without showing any figures representing the mortgage, although it was therein stated that the McLain Place was sold "subject to the security deed in favor of Federal Land Bank." It was not clear from the record then, nor is it clear now, as to whether the purchaser of the equity finally paid the mortgage so as to relieve the estate of all obligation. Even if the mortgage was paid by the purchaser of the equity, we think that the actual value of the McLain Place was $8525, the equity price, and the $12,800 mortgage, making a total of $21,325, which latter sum should have been calculated in the accounting with Mrs. Shipley. Taking this McLain Place value of $21,325 and adding to it $11,450 from the sale of timber and $2253.68 from the sale of personalty from the Randolph County lands, in all of which Mrs. Shipley had a remainder interest, we get $35,028.68 as the amount of gross proceeds in which Mrs. Shipley should share, with that amount subject, however, to an adjustment of the burden of any indebtedness. Had there been no indebtedness on the McLain Place, the assets of the estate arising from the residue and operation of the property under the contract would have sufficed to pay the debts. Since there was a mortgage on the McLain Place, it was as much entitled to be paid as other debts of the estate. Nevertheless the executors chose to sell the McLain Place, reporting only the equity price among the proceeds. In that method of accounting doubtless began the chain of circumstances leading to the questions arising in the present case. Before and during the period of the contract for the operation of the property to pay the indebtedness, certain undisputed items for that purpose were derived as follows: 1. rents from the Stewart Building, $2637.64; 2. rents from the Hollingsworth Building, $867.81; 3. amount derived from the sale of stock certificate issued by Federal Land Bank, $490; 4. amount received from residue of the estate, $5,065.21; 5. profits from the Randolph County farm $31,456.47; 6. option collected on McLain Place $1; the total of the six items being $40,518.13. Out of those receipts all the indebtedness of the estate, except the $12,800 mortgage in favor of the Federal Land Bank on the Terrell County (McLain Place) land, was paid in full, those items

being: 1. mortgage on Randolph County lands, $20,274.47; 2. mortgage on the Stewart Building, $6,645.74; 3. general indebtedness and expenses, $11,271.14; making a total of $38,181.25. Thus, from the $40,518.13 of receipts above shown, when the expense and indebtedness items listed amounting to $38,191:35 are deducted there would remain a surplus of receipts in the amount of $2,326.78. The latter amount could have been applied on the $12,800 mortgage, in which event there would have remained a balance of $10,473.22 on the mortgage. Therefore the last-mentioned amount represented the indebtedness for which Mrs. Shipley was subject in the proportion of her interest. That proportion was 16/28 of one-third, which, applied to the $10,473.22 balance of indebtedness, would give $1,994.91 as her share of the indebtedness. The value of the McLain Place, plus the proceeds of sale of timber and personalty from Randolph County lands, aggregates $35,028.68. Mrs. Shipley's share is 16/28 of one-third of the last-named amount, less $1,994.91 for her share of the burden of the indebtedness. The amount of $35,028.68 divided into three parts gives $11,676.22 for a one-third part, 16/28 of which is $6672.13. Deducting from the latter amount $1994.91, there remains $4677.22. The last-stated amount was the correct principal to which Mrs. Shipley was entitled. Inasmuch as the trial court awarded her $6670 principal, the judgment for principal was excessive to the extent that it exceeded the correct amount of $4677.22.

■ In the remaining assignment of error, the plaintiffs in error contend that the trial court erred in awarding to Mrs. Shipley $1614.55 for interest on a principal sum of $6670 at seven percent per annum from January 1, 1941, to the date of the judgment, June 9, 1945. Since we have held in the first division of this opinion that the correct principal due to Mrs. Shipley was $4677.22, it follows that the interest must be calculated upon that amount instead of being figured upon the principal amount which the trial judge awarded to her. That leaves only the question of the period of time for which the interest should be calculated. In the brief of the plaintiffs in error it is stated: "Interest should be computed from February 3, 1942 [being one year after the qualification of the executors] on that portion of plaintiff's [Mrs. Shipley's] interest realized from the equity in the Terrell County

farm and from the sale of personalty on the Randolph County farm, and . . [Mrs. Shipley's] interest from the sale of the timber should be computed from the date of the receipt of the proceeds from the sale of such timber." The rule concerning interest in a settlement with executors is stated in the Code, § 113-2207 (2), as follows: "No interest shall be charged either way for the first year, as one year is allowed by law for the collection of assets and to ascertain the indebtedness of an estate." The exact date of the sale of the McLain Place does not appear from the record. Since the plaintiffs in error concede that the personalty and equity in lands in which Mrs. Shipley had a remainder interest should bear interest from February 3, 1942, we see no reason why the additional value of the McLain Place, on account of the mortgage, should not draw interest also from the same date as the equity. It is true that the agreed statement of facts (par. 16) shows the receipt of proceeds from the sale of timber in June, July, and September, 1942. However, before that time various sums had been received from the operation and management of the property under the power of attorney, a considerable portion of which had been paid over to the plaintiffs in error on December 31, 1941 (par. 13 of stipulation of facts), and the mortgage on the Stewart Building had been paid on December 31, 1941 (par. 14 of stipulation of facts). Giving effect as near as we can to an adjustment of the correct interest period, we think that interest should be calculated on the principal sum of $4677.22 from February 3, 1942 to the date of the judgment June 9, 1945, at seven per cent per annum. For that period the interest amounts to $1096.89. Mrs. Shipley would be further entitled to interest at the same rate from June 9, 1945, to the date of the judgment on the remittitur in this case, together with any future interest.

*Judgment reversed, with direction. All the Justices concur.*